CUMMINS v ROBINSON TOWNSHIP
BERENS v ROBINSON TOWNSHIP

Docket Nos. 279020, 279064, and 279088. Submitted December 9, 2008, at Grand Rapids. Decided May 12, 2009, at 9:20 a.m.

Vance and Rebecca Cummins brought an action in the Ottawa Circuit Court against Robinson Township, individual members of the township board of trustees, William Easterling and Phillip Forner (township building officials), and others, seeking money for damage to their residence from floods in 2004 and 2005 and the costs associated with rebuilding in compliance with flood-resistant building code requirements imposed by the defendants. The court, Edward R. Post, J., granted summary disposition in favor of Easterling and Forner with regard to the counts alleging and seeking punitive damages for conspiracy to violate the plaintiffs' constitutional, statutory, and common-law rights; concert of action to commit one or more tortious acts; unlawful and unconstitutional extrajudicial taking; deliberate and purposeful violation of state statutes governing the exercise of eminent domain; extortion; trespass; intentional infliction of emotional distress; procedural due process violation; and denial of equal protection. The court denied summary disposition with regard to the counts alleging fraud, gross negligence, and a substantive due process violation. Easterling and Forner appealed, and the township and some of the board members cross-appealed. (Docket No. 279020.)

Dennis Berens, John Boos, and other residents of Robinson Township brought an action in the Ottawa Circuit Court against the township, Easterling, Forner, and others, alleging that the defendants' actions with regard to the imposition of rebuilding requirements following a 2005 flood resulted in violations of US Const, Ams V and XIV, and Const 1963, art 1, § 17, and art 10, § 2, with regard to the taking of property, substantive and procedural due process violations, fraudulent misrepresentation, and breach of duties to fairly and responsibly enforce state and local laws. The court, Edward R. Post, J., granted summary disposition in favor of Easterling and Forner with regard to the Taking Clause allegations, and the plaintiffs dismissed their taking and due process claims against the township trustees. The court denied summary

disposition of the taking claim against the township. The court ruled that the procedural due process claim failed as a matter of law, but denied summary disposition in favor of the township, Easterling, and Forner with regard to the substantive due process claim. The court also granted the defendants' motion for summary disposition of the claims alleging fraudulent misrepresentation and breach of duties to fairly and responsibly enforce state and local law. Easterling and Forner appealed by leave granted. (Docket No. 279064.) The township appealed by leave granted. (Docket No. 279088.) The appeals were consolidated.

The Court of Appeals *held*:

1. The Cumminses' failure to exhaust administrative remedies does not bar their constitutional substantive due process claim brought pursuant to 42 USC 1983. However, it may bar a claim for a regulatory taking.

2. The doctrine of exhaustion of administrative remedies would not deprive the trial court of its jurisdiction with respect to properly filed, viable common-law tort claims, such as fraud or gross negligence, because the Construction Board of Appeals would not have had jurisdiction to grant any monetary relief requested.

3. The trial court erred by not granting Easterling and Forner summary disposition of the gross negligence claim. Even if their interpretation of the building code were grossly negligent, it would not have been the proximate cause of the plaintiffs' claimed injuries, i.e., the one most immediate, efficient, and direct cause preceding the injury.

4. The Single State Construction Code Act, MCL 125.1501 *et seq.*, requires building officials to make prompt building code decisions and provide the opportunity for a prompt appeal of a decision. The code further provides that a building official could face misdemeanor charges if the official knowingly issues, fails to issue, causes to be issued, or assists in the issuance of a certificate, permit, or license in violation of the act or a rule promulgated under the act or other applicable law. In light of this statutory scheme, fairness is not offended by placing the burden on the plaintiffs to appeal perceived economically impracticable and unnecessary building requirements rather than proceed to incur the expense and later seek redress through costly tort litigation. Nothing in the code provides that building officials should face future tort liability for not approving building plans that are the least costly to the applicant. The plaintiffs failed to support their claim that the defendants owed them a duty to interpret and apply the building code to impose as little economic effect as possible.

5. Even if Easterling's and Forner's conduct breached a duty to the plaintiffs and the conduct was grossly negligent, the plaintiffs cannot establish that such conduct was the proximate cause of the plaintiffs' claimed injuries because the plaintiffs cannot establish that the conduct caused them to undertake economically impracticable and unnecessary rebuilding when they had alternatives such as choosing not to rebuild or appealing the building code determinations.

6. The plaintiffs failed to plead with particularity the alleged false representations of material fact that Easterling or Forner made that formed the basis of a claim for fraud. The trial court erred by failing to grant Easterling and Forner summary disposition of the fraud claim.

7. Actionable common-law fraud requires proof that (1) the defendant made a material representation, (2) the representation was false, (3) the defendant knew the representation was false when the defendant made it, or made it recklessly, without knowledge of its truth as a positive assertion, (4) the defendant made the representation with the intention that the plaintiff would act upon it, (5) the plaintiff acted in reliance upon it, (6) and the plaintiff suffered damage. The action must be predicated on a false statement relating to a past or existing fact. Promises regarding the future are contractual and will not support a claim of fraud. The plaintiff must have reasonably relied on the false representation to establish a claim of fraudulent misrepresentation. There can be no fraud where a person has the means to determine that the representation is not true. The alleged false statements made by the defendants regarding the applicability of the building code or other legal requirements pertaining to the plaintiffs' flood-damaged property and whether the cost of repair would exceed 50 percent of the preflood fair market value are actually legal opinions and statements regarding actions necessary in the future to comply with legal requirements. The alleged statements are not false representations concerning an existing or past fact and cannot establish fraud. The plaintiffs cannot establish reasonable reliance on the defendants' statements because information about those matters was readily available to the plaintiffs and within their knowledge. The plaintiffs cannot establish reasonable reliance on any incorrect building code decision because they had ample opportunity to appeal any of the decisions.

8. The general test to determine whether a law or its enforcement violates substantive due process is whether the law is rationally related to a legitimate governmental purpose. In the context of individual governmental actions or actors, however, to

establish a substantive due process violation, the governmental conduct must be so arbitrary and capricious as to shock the conscience. In disputes over municipal actions, including the issuance of building permits, only the most egregious official conduct can be considered arbitrary in the constitutional sense. The specific allegations against Easterling and Forner do not state conscience-shocking conduct. Even if the defendants' application of the flood-resistant building code requirements to the plaintiffs' situation were erroneous, it still furthered legitimate state interests and cannot be characterized as conscience-shocking behavior. The plaintiffs' remedy is an administrative appeal or pursuing other legal remedies, not a claim for violation of substantive due process. To the extent that the plaintiffs alleged an unconstitutional taking, their remedy was not under the substantive component of the Fourteenth Amendment, but rather under the Taking Clause of the Fifth Amendment. The trial court erred by denying the defendants summary disposition of the Cumminses' substantive due process claim.

9. While property may be regulated to a certain extent, if the regulation goes too far it will be recognized as a taking for purposes of the just compensation provisions of US Const, Am V, and Const 1963, art 10, § 2. Apart from the two narrow categories of regulatory action that generally will be deemed taking per se for Fifth Amendment purposes, i.e., where the government requires an owner to suffer a permanent physical invasion of the owner's property or governmental regulations completely deprive an owner of all economically beneficial use of the property, regulatory taking challenges are governed by a balancing test that requires a reviewing court to engage in an ad hoc, factual inquiry centering on three factors: the character of the government's action, the economic effect of the regulation on the property, and the extent by which the regulation has interfered with distinct, investment-backed expectations.

10. There must be some action by the government expressly directed toward the plaintiff's property that effectively limits the use of the property to support a claim that a de facto taking has occurred. The plaintiffs' de facto taking claim fails because they have neither alleged nor produced any evidence of a causal connection between any deliberate actions of the defendants and the decline in the market value of their property. There is no logical causal relationship between compliance with flood-resistant building requirements and any decline in the fair market value of the Cumminses' home. The mere reduction in the value of

regulated property is insufficient by itself to establish that a compensable taking has occurred.

11. Because the Cumminses chose to rebuild their home, the township was required to enforce the state building code. A municipality may not be found liable for a taking of private property when it is merely enforcing the requirements of state law. In order to impose liability on a township, city, or county, the plaintiffs must establish that the defendants' regulation caused the taking. The Taking Clause does not guarantee property owners an economic profit from the use of their land. The fact that the Cumminses' use of their property as a residence is more costly in the face of the need to repair repeated flood damage does not establish a taking.

12. A claim that the application of governmental regulations effects a taking of a property interest is not ripe until the governmental entity charged with implementing the regulations has reached a final decision regarding the application of the regulations to the property at issue. The rule of finality applies even when a plaintiff's constitutional claim is premised under 42 USC 1983. A taking claim based on a law or regulation that is alleged to go too far in burdening property depends on the landowner's first having followed reasonable and necessary steps to allow regulatory agencies to exercise their full discretion in considering development plans for the property, including the opportunity to grant any variances or waivers allowed by law. Until these ordinary processes have been followed, the extent of the regulation on property is not known and a regulatory taking has not yet been established. The Cumminses' taking claim was not ripe for adjudication because they failed to seek alternative relief from the Construction Board of Appeals, which could have reviewed and granted relief if the defendants improperly or erroneously applied the building code requirements and could have granted variances from the code's requirements. The plaintiffs are not excused from the rule of finality because they have not demonstrated that an appeal to the Construction Board of Appeals would have been futile. The trial court erred by not granting summary disposition in favor of the defendants on the taking claims because they were not ripe for judicial review.

13. The substantive due process claims brought by the plaintiffs in Docket Nos. 279064 and 279088 failed for the same reasons the Cumminses' claim failed in Docket No. 279020.

14. The plaintiffs' temporary regulatory taking claim in Docket Nos. 279064 and 279088 lacks merit because they have not shown that an extraordinary delay in the permit review process

resulted in a temporary taking requiring just compensation. No extraordinary delay occurred in the permit review process in these appeals. Summary disposition should have been granted in favor of all the defendants in both appeals. The matter must be remanded to the trial court for the entry of an order of summary disposition in favor of all the defendants on all the plaintiffs' claims.

Reversed and remanded.

1. ADMINISTRATIVE LAW — CONSTITUTIONAL LAW — TORTS — EXHAUSTION OF REMEDIES.

The failure to exhaust administrative remedies does not bar a substantive due process claim brought pursuant to 42 USC 1983 or a properly filed, viable common-law tort claim such as fraud or gross negligence.

2. TORTS — NEGLIGENCE — ELEMENTS OF NEGLIGENCE — ADMINISTRATIVE LAW — SINGLE STATE CONSTRUCTION CODE ACT — APPEAL.

The Single State Construction Code Act requires building officials to make prompt building code decisions and provide the opportunity for a prompt appeal of a decision; the act does not provide that building officials may face future tort liability for not approving building plans that are the least costly to the applicant (MCL 125.1511[1]).

3. FRAUD — MISREPRESENTATION — KNOWLEDGE OF FALSEHOOD — REASONABLE RELIANCE ON FALSE REPRESENTATION.

A plaintiff seeking to establish a claim of fraudulent misrepresentation must establish that the plaintiff reasonably relied on the false representation; alleged misrepresentations regarding the terms of written documents that are available to the plaintiff cannot support reasonable reliance.

4. CONSTITUTIONAL LAW — DUE PROCESS — SUBSTANTIVE DUE PROCESS.

A plaintiff must allege conduct that is intended to injure in some way unjustifiable by any governmental interest and that is conscience-shocking in nature to state a cognizable substantive due process claim.

5. CONSTITUTIONAL LAW — DUE PROCESS — SUBSTANTIVE DUE PROCESS.

When a particular amendment of the United States Constitution provides an explicit textual source of constitutional protection against a particular sort of governmental behavior, that amendment, not the more generalized notion of substantive due process, must be the guide for analyzing the claim.

6. CONSTITUTIONAL LAW — MUNICIPAL CORPORATIONS — TAKING PRIVATE PROPERTY.

A municipality may not be found liable for a taking of private property when it is merely enforcing the requirements of state law; the plaintiff must establish that a township, city, or county regulation caused a taking in order to impose liability on the township, city, or county for the taking.

7. CONSTITUTIONAL LAW — TAKING PRIVATE PROPERTY — GOVERNMENTAL REGULATIONS — CIVIL RIGHTS ACTIONS — RULE OF FINALITY.

A claim that the application of governmental regulations effects a taking of a property interest is not ripe until the governmental entity charged with implementing the regulations has reached a final decision regarding the application of the regulations to the property at issue; the rule of finality applies even where the plaintiff's claim is based on 42 USC 1983.

8. ADMINISTRATIVE LAW — SINGLE STATE CONSTRUCTION CODE ACT — VARIANCES.

The Single State Construction Code Act authorizes a construction board of appeals to grant variances from a substantive requirement of the code if the literal application of the substantive requirement would result in an exceptional, practical difficulty to the applicant, provided that certain conditions are met (MCL 125.1515[1]).

*Corwin Law & Consulting, PLC* (by *Stephen C. Corwin* and *Thoa K. Du*), for Vance and Rebecca Cummins.

*Dilley & Rominger, PLC* (by *Charles S. Rominger*), for Dennis Berens and others.

*Smith Haughey Rice & Roegge* (by *William L. Henn, Craig R. Noland,* and *Jon D. Vander Ploeg*) and *Scholten Fant* (by *Ronald A. Bultje*) for Robinson Township, Bernice Berens, Jackie Frye, Cheryl Clark, John Kuyers, Tracy Mulligan, Jacob Korving, and Chris Kuncaitis.

*Foster, Swift, Collins & Smith, P.C.* (by *Thomas R. Meagher* and *Philip E. Hamilton*), for William Easterling and Phillip Forner.

Before: Murray, P.J., and Markey and Wilder, JJ.

Per Curiam. These are consolidated appeals from two cases in which plaintiffs are residents of the Van Lopik and Limberlost subdivisions in Robinson Township who assert tort claims and constitutional violations against the township, the members of its board of trustees (Bernice Berens, Jackie Frye, Cheryl Clark, John Kuyers, Tracy Mulligan, Jacob Korving, Chris Kuncaitis, Ray Masko, Earl Rayla, Donna Stille, and Larry Harmon), its building officials (William Easterling and Phillip Forner), and others, after the Grand River flooded in the area of their homes in May 2004 and January 2005. The trial court granted in part and denied in part defendants' motions for summary disposition in each case. In Docket No. 279020, defendants appeal and cross-appeal. In Docket Nos. 279064 and 279088, defendants appeal by leave granted. We reverse and remand for entry of summary disposition in favor of all defendants on all of plaintiffs' claims.

The underlying dispute in these cases involves the application of the Single State Construction Code Act (SSCCA), MCL 125.1501 *et seq.* At the times pertinent to these actions (2004 and 2005), the applicable building code in Michigan was, with certain exceptions, the International Building Code (2003). The 2003 International Building Code was adopted by reference effective February 29, 2004. See 2004 AACS, R 408.30401. Specifically, the defendant building officials determined the cost of repairing plaintiffs' flood-damaged homes would exceed 50 percent of the fair market value of plaintiffs' homes before the flooding, thus triggering the application of flood-resistant building code requirements. 2003 Michigan Residential Code R105.3.1.1. The Cumminses, in Docket No. 279020, were the only parties who suffered damage in the 2004 flood and borrowed in

excess of their home's value to rebuild it under the flood-resistant building code requirements before the 2005 flood. Almost all plaintiffs in Docket Nos. 279064 and 279088 appealed to the Construction Board of Appeals (CBA) on the basis that the 50 percent threshold had not been reached. By December 1, 2005, the CBA had granted relief to all plaintiffs who appealed. All plaintiffs were reissued occupancy permits by October 2005, regardless of whether their homes complied with building code or health department regulations.

In Docket No. 279020, the Cumminses filed their complaint in July 2006, alleging 13 separate counts: (1) conspiracy to violate plaintiffs' constitutional, statutory, and common-law rights, (2) concert of action to commit one or more tortious acts, (3) unlawful and unconstitutional extrajudicial taking, (4) deliberate and purposeful violation of state statutes governing the exercise of eminent domain, (5) fraud, (6) extortion, (7) trespass, (8) intentional infliction of emotional distress, (9) gross negligence, (10) substantive due process violation, (11) procedural due process violation, (12) denial of equal protection, and (13) punitive damages against the individual township trustees and building officials Easterling and Forner. The trial court granted Easterling and Forner's motion for summary disposition pursuant to MCR 2.116(C)(4), (7), (8), and (10) with regard to all counts except counts (5) fraud, (9) gross negligence, and (10) substantive due process violation.

The trial court ruled that the Cumminses' fraud claim against Easterling and Forner presented material issues of fact for trial. The court reasoned "that there is a genuine issue of material fact as to whether or not defendants made false material representations of facts to plaintiffs which plaintiffs relied upon." On this basis, the trial court ruled that defendants' motion for sum-

mary disposition regarding count (5) fraud failed pursuant to MCR 2.116(C)(10).

Regarding the Cumminses' gross negligence claim against Easterling and Forner, the trial court also determined that a material question of fact existed over whether defendants' conduct constituted gross negligence under MCL 691.1407. Specifically, the court ruled that a question of fact existed concerning whether defendants' imposition of building code requirements after the 2004 and 2005 floods rose to the level of gross negligence and was the proximate cause of plaintiffs' injuries.

The trial court also ruled that plaintiffs' substantive due process claim survived defendants Easterling and Forner's motion for summary disposition. Specifically, the court determined that a genuine issue of material fact existed regarding whether defendants acted arbitrarily and capriciously by imposing new building code requirements on plaintiffs in an effort to convince the Federal Emergency Management Agency (FEMA) to provide the township with grant funds to buy plaintiffs' property. Easterling and Forner appeal by right.

Regarding the Cumminses' claims against the township and its trustees, the trial court did not dismiss count (3) unlawful and unconstitutional extrajudicial taking, and count (10) substantive due process violation. The trial court ruled that plaintiffs' taking claim was not barred by the doctrine of ripeness, reasoning that the CBA was not the initial decision maker and that an appeal by the Cumminses to the CBA would have been futile because the CBA could not award money damages. Further, the court determined that the Cumminses' allegations that defendants engaged in a deliberate and aggressive course of action against plaintiffs to force them to sell their property without pay-

ment of just compensation and that defendants' actions caused plaintiffs to expend thousands of dollars in unnecessary repairs, stated a claim for a de facto or regulatory taking for which issues of material fact remained.

The trial court, however, dismissed the Cumminses' taking claims against the individual township trustees because the Cumminses produced no legal authority to establish that individuals—as opposed to the township— could take property for public use. The court also dismissed plaintiffs' tort claims against the township and its trustees on the basis of governmental immunity.

The trial court granted defendants' motion for summary disposition regarding plaintiffs' procedural due process claim, but the court ruled that genuine issues of material fact remained with regard to the Cumminses' substantive due process claim. As with this claim against Easterling and Forner, the trial court ruled that there was a genuine issue of material fact concerning whether defendants acted arbitrarily and capriciously when they imposed new building code requirements on plaintiffs in an alleged attempt to convince FEMA to provide the township with funds necessary to induce the Cumminses and other plaintiffs to sell their properties. Defendant Robinson Township and its trustees cross-appeal the various rulings of the trial court denying summary disposition with regard to plaintiffs' taking and substantive due process claims.

In Docket No. 279064, defendants Easterling and Forner appeal by leave granted the trial court's order that denied their motion for summary disposition, in part, with regard to plaintiffs' claims for violations of their rights to substantive due process. In Docket No. 279088, the township appeals by leave granted the trial court's order that denied its motion for summary dis-

position, in part, with regard to plaintiffs' taking and substantive due process claims. Both of these appeals arise from the same lower court case.

Plaintiffs' complaint set forth four unlabeled counts. The first count cited the Fifth Amendment of the United States Constitution and Const 1963, art 10, § 2, and alleged that defendants violated plaintiffs rights by

[f]iling [a] false application for a FEMA grant, including the intent and plan to take Plaintiffs' properties without just compensation; [and]

Imposing unwarranted re-build and renovation require-ments that were not required to avoid the effects of periodic floods in the general area.

The trial court granted defendants Easterling and Forner's motion for summary disposition regarding count I because the Taking Clause implicates only governmental, not individual liability. Plaintiffs appar-ently voluntarily dismissed both their taking and due process claims against the township trustees. As for plaintiffs' taking claim against the township, the trial court ruled as it did in Docket No. 279020. It found that plaintiffs' complaint pleaded facts that, if proved, would state a temporary taking claim and that genuine issues of material fact remained and precluded summary dis-position.

Plaintiffs alleged in count II of their complaint that defendants violated plaintiffs' rights under the Fifth Amendment and the Fourteenth Amendment of the United States Constitution and Const 1963, art 1, § 17. The trial court viewed this count as stating a claim based on both procedural and substantive due process. The trial court ruled that the procedural due process claim failed as a matter of law. But the trial court denied defendants' motion with respect to plaintiffs' substan-tive due process claim against the township and defen-

dants Easterling and Forner for the same reasons it denied summary disposition regarding similar claims by the Cumminses in Docket No. 279020.

The trial court granted defendants summary disposition of plaintiffs' claims in count III (fraudulent misrepresentation) and in count IV (breach of duties "to fairly and responsibly enforce state and local laws").

This Court granted defendants' application for leave to appeal in Docket Nos. 279064 and 279088, in part, because nearly identical issues were already before the Court as an appeal by right in Docket No. 279020, arising out of same factual circumstances. The Court also consolidated all three appeals to advance the efficient administration of the appellate process.

This Court reviews de novo a trial court's decision regarding a motion for summary disposition. *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999). A trial court properly grants the motion when the proffered evidence fails to establish any genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003). "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *Id.*

"MCR 2.116(C)(8) tests the legal sufficiency of the claim on the pleadings alone to determine whether the plaintiff has stated a claim on which relief may be granted." *Spiek v Dep't of Transportation*, 456 Mich 331, 337; 572 NW2d 201 (1998). The trial court and this Court must accept all well-pleaded factual allegations as true, construing them in a light most favorable to the nonmoving party. *Maiden, supra* at 119. The motion may be granted only "where the claims are so clearly

unenforceable as a matter of law that no factual development could possibly justify recovery." *Wade v Dep't of Corrections*, 439 Mich 158, 163; 483 NW2d 26 (1992).

We also review de novo constitutional issues and any other questions of law that are raised on appeal. *Forge v Smith*, 458 Mich 198, 204; 580 NW2d 876 (1998); *Hinojosa v Dep't of Natural Resources*, 263 Mich App 537, 541; 688 NW2d 550 (2004).

### I. DOCKET NO. 279020

Easterling and Forner first argue that, in essence, plaintiffs' claims against them are that they misinterpreted or misapplied the building code, which ultimately led to plaintiffs' damages. Consequently, they argue, because plaintiffs failed to exhaust their administrative remedies, the trial court lacked subject-matter jurisdiction and plaintiffs' complaint should have been dismissed in its entirety under MCR 2.116(C)(4). Plaintiffs argue that they are not required to exhaust their administrative remedies to bring a substantive due process claim under 42 USC 1983. Further, plaintiffs contend that they are excused from any requirement of exhaustion of administrative remedies because to do so would have been futile. The CBA would not have been able to award plaintiffs the relief they sought, which was money damages.

We agree with plaintiffs that failing to exhaust administrative remedies does not bar their constitutional substantive due process claim brought pursuant to 42 USC 1983. It may, however, bar a claim for a regulatory taking. See *Electro-Tech, Inc v H F Campbell Co*, 433 Mich 57, 79-83; 445 NW2d 61 (1989), discussing *Patsy v Florida Bd of Regents*, 457 US 496; 102 S Ct 2557; 73 L Ed 2d 172 (1982), and *Williamson Co Regional Planning Comm v Hamilton Bank of Johnson City*, 473 US

172; 105 S Ct 3108; 87 L Ed 2d 126 (1985). Also, we conclude that the doctrine of exhaustion of administrative remedies would not deprive the trial court of its jurisdiction with respect to properly filed, viable common-law tort claims, such as fraud or gross negligence. The doctrine of exhaustion of administrative remedies requires that where an administrative agency provides a remedy, a party must seek such relief before petitioning the court. *Trever v Sterling Hts*, 37 Mich App 594, 596; 195 NW2d 91 (1972). The converse, however, is that where the administrative appellate body cannot provide the relief sought, the doctrine does not apply. *Id.* at 596-597. Here, plaintiffs assert tort claims against defendants alleging that defendants fraudulently induced plaintiffs to incur unnecessary expenses and that defendants were grossly negligent. Thus, plaintiffs' argument that the CBA would not have jurisdiction to grant the relief they requested (money damages) has merit.

Easterling and Forner next argue that the trial court erred when it failed to dismiss plaintiffs' gross negligence claim. They assert entitlement to immunity from tort liability pursuant to MCL 691.1407(2)(c) because their conduct did not amount to gross negligence, and even if it did, it was not the proximate cause of plaintiffs' damages. Plaintiffs argue they are not required to plead specific facts in avoidance of government immunity because that requirement applies only to claims against governmental bodies, not governmental employees. Plaintiffs assert that the trial court correctly ruled that genuine issues of material fact remain for trial regarding whether Easterling and Forner were grossly negligent by imposing allegedly unwarranted rebuilding requirements after the floods in 2004 and 2005 and whether this gross negligence was the proximate cause of plaintiffs' injuries.

We conclude that the trial court erred by not granting defendants summary disposition with regard to plaintiffs' gross negligence claim. Even if Easterling's and Forner's interpretation of the building code were grossly negligent, it would not have been "the" proximate cause of plaintiffs' claimed injuries, i.e., the one most immediate, efficient, and direct cause preceding the injury. MCL 691.1407(2)(c); *Robinson v Detroit*, 462 Mich 439, 446; 613 NW2d 307 (2000).

Here, plaintiffs have not stated, nor have they argued on appeal, the nature and extent of the alleged duty that Easterling and Forner might have breached so as to render them liable for gross negligence. The governmental immunity statute does not itself create a cause of action called "gross negligence." *Rakowski v Sarb*, 269 Mich App 619, 627; 713 NW2d 787 (2006). It is axiomatic that the tort of negligence consists of four elements: (1) a duty owed by the defendant to the plaintiff, (2) a breach of that duty, (3) causation, and (4) damages. *Henry v Dow Chemical Co*, 473 Mich 63, 71-72; 701 NW2d 684 (2005). "Duty" is a legally recognized obligation to conform to a particular standard of conduct toward another so as to avoid unreasonable risk of harm. *Maiden, supra* at 131. And, if defendants owed no duty to plaintiffs, plaintiffs' gross negligence claim is unenforceable as a matter of law. *Id.* at 135.

"Whether a defendant owes a plaintiff a duty of care is a question of law for the court." *Beaudrie v Henderson*, 465 Mich 124, 130; 631 NW2d 308 (2001). A duty of care may arise from a statute, a contractual relationship, or by operation of the common law, which imposes an obligation to use due care or to act so as not to unreasonably endanger other persons or their property. *Riddle v McLouth Steel Products Corp*, 440 Mich 85, 95; 485 NW2d 676 (1992); *Clark v Dalman*, 379 Mich 251,

261; 150 NW2d 755 (1967). This Court in *Rakowski*, *supra* at 629, listed a number of factors pertinent to determining whether to impose a common-law duty:

> (1) the relationship of the parties, (2) the foreseeability of the harm, (3) the degree of certainty of injury, (4) the closeness of connection between the conduct and injury, (5) the moral blame attached to the conduct, (6) the policy of preventing future harm, and, (7) finally, the burdens and consequences of imposing a duty and the resulting liability for breach. The inquiry is ultimately a question of fairness involving a weighing of the relationship of the parties, the nature of the risk, and the public interest in the proposed solution. [Citations and punctuation omitted.]

The *Rakowski* Court weighed these factors to conclude that a building inspector did not owe a duty of care to a third party injured by faulty construction the inspector had approved. *Id.* at 630-635. Here, plaintiffs assume, but do not support with citation of legal authority or argument, that defendants owed them a duty to interpret and apply the building code to impose as little economic effect as possible. But the SSCCA requires that this state's various building codes balance several factors, including ensuring adequate maintenance of buildings and structures while still adequately protecting the health, safety, and welfare of the people. MCL 125.1504(3)(e). The SSCCA also has the goal of eliminating "restrictive, obsolete, conflicting, and unnecessary construction regulations that tend to increase construction costs unnecessarily . . . ." MCL 125.1504(3)(d). Nothing in the SSCCA, however, suggests that a front-line building official should face future tort liability for not approving building plans that are the least costly to the applicant. Rather, the SSCCA requires that building officials make prompt building code decisions and provide the opportunity for a prompt appeal of a building official's decision. MCL

125.1511(1) provides: "Failure by an enforcing agency to grant, in whole or in part, or deny an application within [10 or 15 business days] shall be deemed a denial of the application for purposes of authorizing the institution of an appeal to the appropriate board of appeals." Further, a local building official could face misdemeanor criminal charges if the official "[k]nowingly issues, fails to issue, causes to be issued, or assists in the issuance of a certificate, permit, or license in violation of [the SSCCA] or a rule promulgated under this act or other applicable laws." MCL 125.1523(1)(g). In light of this statutory scheme, we conclude that fairness is not offended by placing the burden on plaintiffs to appeal perceived economically impracticable and unnecessary building requirements rather than proceed to incur the expenses and later seek redress through costly tort litigation. Recognizing the duty that plaintiffs assume exists would not advance the public interest.

Moreover, even if Easterling's and Forner's conduct breached a duty to plaintiffs and the conduct is "gross negligence" as defined by MCL 691.1407(7)(a), plaintiffs cannot establish that such conduct was "the" proximate cause of plaintiffs' claimed injuries. Simply stated, plaintiffs cannot establish that defendants' conduct caused them to undertake economically impracticable and unnecessary rebuilding when plaintiffs had alternative courses of action, including (1) choosing not to rebuild (selling their property "as is," just as they did when the Cumminses purchased the property in a flood-damaged state in 1994), or (2) exercising their right to appeal building code determinations they deemed impracticable or unnecessary. In addition, plaintiffs acknowledge in their complaint that other actors and causes contributed to their financial losses, including a decline in market values. Plaintiffs chose to incur debt far in excess of their property's preflood

value. Further, other factors played a part in plaintiffs' financial problems and stress, including "lost business revenue . . . mortgage costs . . . [and] facing foreclosure." Because other homeowners successfully pursued administrative appeals, plaintiffs cannot establish that Easterling's and Forner's interpretation and application of the building code, even if "grossly negligent," were "the proximate cause," i.e., "the one most immediate, efficient, and direct cause preceding [their] injury . . . ." *Robinson, supra* at 446.

Easterling and Forner next argue that the trial court erred when it failed to grant summary disposition with regard to plaintiffs' fraud claim. We agree. Plaintiffs have failed to plead with particularity the false representations of material fact that either Easterling or Forner made that form the basis of a claim for fraud. MCR 2.112(B)(1); *Cooper v Auto Club Ins Ass'n*, 481 Mich 399, 414; 751 NW2d 443 (2008). Further, a viable fraud claim may not be inferred, even viewing plaintiffs' complaint in the light most favorable to them. At most, plaintiffs allege that defendants made intentional, inaccurate statements regarding the law or stated opinions about future events (repair costs), which were not misrepresentations of existing or past facts necessary to support a claim of fraud. So plaintiffs' complaint fails to state a claim for which relief can be granted. MCR 2.116(C)(8).

Actionable common-law fraud requires proof that " '(1) the defendant made a material representation; (2) the representation was false; (3) when the defendant made the representation, the defendant knew that it was false, or made it recklessly, without knowledge of its truth as a positive assertion; (4) the defendant made the representation with the intention that the plaintiff would act upon it; (5) the plaintiff acted in reliance

upon it; and (6) the plaintiff suffered damage.' " *M&D, Inc v McConkey,* 231 Mich App 22, 27; 585 NW2d 33 (1998) (citations omitted). Further, an action for fraud must be predicated upon a false statement relating to a past or existing fact; promises regarding the future are contractual and will not support a claim of fraud. *Hi-Way Motor Co v Int'l Harvester Co,* 398 Mich 330, 336; 247 NW2d 813 (1976). Further, to establish a claim of fraudulent misrepresentation, the plaintiff must have reasonably relied on the false representation. *Nieves v Bell Industries, Inc,* 204 Mich App 459, 464; 517 NW2d 235 (1994). "There can be no fraud where a person has the means to determine that a representation is not true." *Id.*

Plaintiffs argue that the gist of their fraud claim is that defendants imposed unrealistic and unwarranted requirements on them when seeking building and occupancy permits after floods damaged their home in 2004 and 2005. Plaintiffs allege that all named defendants "individually, collectively, or with one or more actors, made one or more material representations" as follows:

> a. Misrepresented the law insofar as such law pertained to effecting repair on the homeowners' properties, and Plaintiffs' in particular,
>
> b. Misrepresented the facts pertaining to the nature and extent of damages to homeowners' properties, and Plaintiffs' in particular, as caused by the 2004 and 2005 Floods, and
>
> c. Misrepresented the law and the necessity of taking action to evict homeowners and Plaintiffs in particular and the shutting off of their utilities.

Plaintiffs do not allege with particularity the statements each defendant made that support these conclusory allegations. MCR 2.112(B)(1). Plaintiffs merely refer to unspecified allegations throughout their com-

plaint. Assuming that the three stated allegations above can be inferred from the whole of plaintiffs' complaint, it is clear that allegations a and c relate to opinions regarding the applicability of the building code or other legal requirements pertaining to plaintiffs' flood-damaged property. Allegation c apparently relates to a determination whether the cost of repairing plaintiffs' home would exceed 50 percent of its fair market value before the flood damage, which would involve the application of flood-resistant building code requirements. See 2003 Michigan Residential Code R105.3.1.1. Thus, viewing plaintiffs' allegations in the light most favorable to them, we conclude that the alleged false statements are actually legal opinions and statements regarding actions necessary in the future to comply with legal requirements. So, the alleged statements are not false representations concerning an existing or past fact and cannot constitute fraud. *Hi-Way Motor Co, supra* at 336; see also *Michaels v Amway Corp*, 206 Mich App 644, 652; 522 NW2d 703 (1994) (alleged misrepresentation of the meaning of a contract term could not constitute fraud because not predicated on a statement of past or existing fact), and *Kamalnath v Mercy Mem Hosp Corp*, 194 Mich App 543, 554; 487 NW2d 499 (1992) (statements related to future action and to opinion were not actionable as fraud because not predicated on a statement relating to a past or an existing fact).

We acknowledge that some caselaw indicates that " 'the mere fact that statements relate to the future will not preclude liability for fraud if the statements were intended to be, and were accepted as, representations of fact, and involved matters peculiarly within the knowledge of the speaker.' " *Foreman v Foreman*, 266 Mich App 132, 143; 701 NW2d 167 (2005), quoting *Crook v Ford*, 249 Mich 500, 504-505; 229 NW 587 (1930).

Both *Foreman* and *Crook* are factually distinguishable from the present case. In *Crook*, the alleged false statements related to the past fact of whether a home had been constructed in a workmanlike manner. *Crook, supra* at 502. In *Foreman*, the false statements were made in a divorce case regarding the value of a major marital asset (a car dealership), and the other spouse was not permitted full access to make her own valuation. *Foreman, supra* at 143-144. The *Foreman* case also involved the wife's claim that she was fraudulently induced to enter a property settlement on the basis of the husband's false statement that he would continue operating the car dealership rather than sell it.[1] *Id.* at 143-148. There is no claim in the present case that defendants made false promises of future conduct with fraudulent intent upon which plaintiffs detrimentally relied.

Even assuming that defendants either knowingly or recklessly imposed "false" building code requirements, i.e., ones that were not legally required, plaintiffs' fraud theory still fails because plaintiffs cannot establish reasonable reliance on defendants' statements. *Nieves, supra* at 464. Thus, alleged misrepresentations regarding the terms of written documents that are available to the plaintiff cannot support the element of reasonable reliance. *Id.* at 464-465; *Cooper, supra* at 414-415. Here, the building code would have been readily available to plaintiffs. "People are presumed to know the law." *Adams Outdoor Advertising v East Lansing (After Remand)*, 463 Mich 17, 27 n 7; 614 NW2d 634 (2000), citing *Mudge v Macomb Co*, 458 Mich 87, 109 n 22; 580 NW2d 845 (1998). Likewise, the value of plaintiffs'

---

[1] "Fraud in the inducement occurs where a party materially misrepresents future conduct under circumstances in which the assertions may reasonably be expected to be relied upon and are relied upon." *Samuel D Begola Services, Inc v Wild Bros*, 210 Mich App 636, 639; 534 NW2d 217 (1995).

home before the flood and the cost of any necessary repairs would be matters at least equally within plaintiffs' knowledge or their ability to determine. Plaintiffs had equal access to information by which they were "bound to inform themselves of their rights before acting, and, if they fail[ed] to do so, they themselves are responsible for the loss." *Cooper, supra* at 415.

Additionally, the element of reasonable reliance is further negated because plaintiffs had ample opportunity to appeal any of Easterling's and Forner's building code determinations. The SSCCA provides ample opportunity to an aggrieved party to promptly appeal an adverse decision by a local building code official. MCL 125.1514 requires the creation of a construction board of appeals for each governmental subdivision enforcing the code. When necessary documents are provided to building officials, they must render a decision regarding permit applications within 10 or 15 business days. MCL 125.1511(1). "Failure by an enforcing agency to grant, in whole or in part, or deny an application within these periods of time shall be deemed a denial of the application for purposes of authorizing the institution of an appeal to the appropriate board of appeals." *Id.* "If an enforcing agency refuses to grant an application for a building permit, or if the enforcing agency makes any other decision pursuant or related to this act, or the code, an interested person, or the person's authorized agent, may appeal in writing to the board of appeals." MCL 125.1514(1). In addition to having the authority to correct any erroneous determination by building officials, the construction board of appeals also has the authority to grant "a specific variance to a substantive requirement of the code if the literal application of the substantive requirement would result in an exceptional, practical difficulty to the applicant," provided certain conditions are satisfied. MCL 125.1515. Fur-

ther, an aggrieved party may appeal an adverse decision of the construction board of appeals to the State Construction Code Commission. MCL 125.1516. Beyond administrative appeals, further appeal to the circuit court and to this Court are available. See MCL 125.1517; MCL 125.1518; MCL 24.301. Consequently, plaintiffs cannot establish reasonable reliance on any incorrect building code decision defendants made that would constitute a viable claim for fraud. The trial court erred by not granting defendants' motion for summary disposition with regard to plaintiffs' fraud claim.

All defendants argue that the trial court erred by not granting them summary disposition of plaintiffs' substantive due process claim. We agree. Accepting plaintiffs' factual allegations as true and construing them in the light most favorable to plaintiffs, we conclude that plaintiffs' substantive due process claim against all defendants fails as a matter of law. The trial court erred by not granting defendants summary disposition of this claim. MCR 2.116(C)(8).

Both the Fourteenth Amendment of the United States Constitution and Const 1963, art 1, § 17, guarantee that no state shall deprive any person of "life, liberty or property, without due process of law." *People v Sierb*, 456 Mich 519, 522; 581 NW2d 219 (1998). These constitutional provisions guarantee more than procedural fairness and have a substantive component that protects individual liberty and property interests "against ' "certain government actions regardless of the fairness of the procedures used to implement them." ' " *Id.* at 523, quoting *Collins v Harker Hts*, 503 US 115, 125; 112 S Ct 1061; 117 L Ed 2d 261 (1992), quoting *Daniels v Williams*, 474 US 327, 331; 106 S Ct 662; 88 L Ed 2d 662 (1986). This state's constitutional provi-

sion is coextensive with its federal counterpart. *Sierb, supra* at 523. "The underlying purpose of substantive due process is to secure the individual from the arbitrary exercise of governmental power." *Id.*

In general, the test to determine whether a law or its enforcement violates substantive due process is "whether the law is rationally related to a legitimate governmental purpose." *Electronic Data Systems Corp v Flint Twp*, 253 Mich App 538, 549; 656 NW2d 215 (2002); see also *Syntex Laboratories v Dep't of Treasury*, 233 Mich App 286, 292; 590 NW2d 612 (1998) (applying the same test to the department's enforcement decision). In the context of individual governmental actions or actors, however, to establish a substantive due process violation, "the governmental conduct must be so arbitrary and capricious as to shock the conscience." *Mettler Walloon, LLC v Melrose Twp*, 281 Mich App 184, 198; 761 NW2d 293 (2008). In disputes over municipal actions, including the issuance of building permits, only the most egregious official conduct can be considered arbitrary in the constitutional sense. *Id.* at 197, quoting *City of Cuyahoga Falls v Buckeye Community Hope Foundation*, 538 US 188, 198-199; 123 S Ct 1389; 155 L Ed 2d 349 (2003), and *Sacramento Co v Lewis*, 523 US 833, 846; 118 S Ct 1708; 140 L Ed 2d 1043 (1998).

This Court in *Mettler Walloon* surveyed numerous federal decisions that addressed substantive due process claims in the context of enforcement of land use regulations and concluded, "under federal law, even a violation of state law in the land use planning process does not amount to a federal substantive due process violation." *Mettler Walloon, supra* at 203. One of the federal cases the *Mettler Walloon* Court reviewed was *Mongeau v City of Marlborough*, 492 F3d 14, 20 (CA 1,

2007), in which the plaintiff, Eugene Mongeau, asserted that city building official Stephen Reid had violated Mongeau's substantive due process rights in part by " 'wrongly charg[ing] or demand[ing] too much for his building permit . . . .' " The federal court noted, in essence, that even if this were true, " '[Mongeau] may find recourse in other laws, but not in the substantive component of the Due Process Clause of the Fourteenth Amendment.' " *Mettler Walloon, supra* at 201, quoting *Mongeau, supra* at 20. Similarly, this Court quoted *Koscielski v City of Minneapolis*, 435 F3d 898 (CA 8, 2006), in turn quoting *Anderson v Douglas Co*, 4 F3d 574, 577 (CA 8, 1993), opining that " '[d]ue process claims involving local land use decisions must demonstrate the "government action complained of is truly irrational, that is something more than . . . arbitrary, capricious, or in violation of state law." ' " *Mettler Walloon, supra* at 204. In sum, the " 'Due Process Clause "is not a guarantee against incorrect or ill-advised [governmental] decisions." ' " *Id.* at 206, quoting *Collins, supra* at 129 (citation omitted).

Here, plaintiffs' primary allegation against defendants is the strict enforcement of building code provisions requiring flood-resistant construction when plaintiffs claim they should have been allowed to utilize cheaper (and less flood-resistant) rebuilding methods and materials. But even if defendants' application of the building code to plaintiffs' circumstance were erroneous, their enforcement of flood-resistant building code requirements still advanced legitimate state interests in protecting the health, safety, and welfare of the public and protected property located in flood-prone areas. Plaintiffs also do not dispute that if the township planned to acquire private property in the flood plain where their home was located for a park and as a flood buffer zone, this

too would further a public use that would serve similar legitimate state interests. Indeed, plaintiffs do not contend that the township could not condemn their property for this public use; rather, plaintiffs allege only that the township, through Easterling, Forner, and others, attempted to acquire their property at less than its fair market value, that is, without constitutionally required "just compensation."

These allegations do not state conscience-shocking conduct. " 'To state a cognizable substantive due process claim, the plaintiff must allege "conduct intended to injure in some way unjustifiable by *any* government interest" *and* that is "conscience-shocking" in nature.' " *Mettler Walloon, supra* at 201-202, quoting *Mitchell v McNeil*, 487 F3d 374, 377 (CA 6, 2007), quoting *Lewis, supra* at 849 (emphasis added). Consequently, even if defendants' application of the flood-resistant building code requirements to plaintiffs' situation were erroneous, it still furthered legitimate state interests and, therefore, could not be characterized as conscience-shocking. Plaintiffs' remedy for an erroneous building code decision is to perfect an administrative appeal or pursue other available legal remedies; plaintiffs' claim is not one of substantive due process. *Mongeau, supra* at 20. Even assuming that defendants were motivated to further a township flood-mitigation plan, their subjective motivation does not alter the legal conclusion that applying flood-resistant building code provisions to property situated in a flood plain, which had suffered repeated flood damage over the years, furthered legitimate state interests and therefore is not egregious, conscience-shocking conduct. *Mettler Walloon, supra.*

Plaintiffs' allegation that defendants attempted to take private property without just compensation also

fails to support their substantive due process claim. First, as the trial court correctly ruled, only a governmental entity may take private property for public use. Second, the township did not, in fact, purchase plaintiffs' property for less than fair market value. Plaintiffs were not forced "to surrender their property for pennies on the dollar or nothing." If the township had acquired plaintiffs' property at less than fair market value other than through a voluntary sale, plaintiffs' remedy would have arisen under the Fifth Amendment, not the substantive due process component of the Fourteenth Amendment of the United States Constitution and Const 1963, art 1, § 17. In *Lewis*, the Supreme Court noted its reluctance " 'to expand the concept of substantive due process' " so that " '[w]here a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims.' " *Id.* at 842, quoting *Albright v Oliver*, 510 US 266, 273; 114 S Ct 807; 127 L Ed 2d 114 (1994) (plurality opinion of Rehnquist, C.J.), quoting *Graham v Connor*, 490 US 386, 395; 109 S Ct 1865; 104 L Ed 2d 443 (1989) (citation omitted). Because claims of permanent or temporary regulatory taking of private property for public use without just compensation come within the protection of the Fifth Amendment, see *First English Evangelical Lutheran Church v Los Angeles Co*, 482 US 304; 107 S Ct 2378; 96 L Ed 2d 250 (1987) (*First English I*) (involving the allegation that a flood-plain ordinance denied all use of property near a riverbed), this part of plaintiffs' claim cannot invoke the Due Process Clause. *Lewis, supra* at 842.

Plaintiffs have not alleged that defendants conducted themselves so outrageously or arbitrarily as to shock the conscience. *Mettler Walloon, supra* at 197-213. Rather, plaintiffs allege conduct that furthers legitimate state interests—enforcing the state building code by requiring flood-resistant construction for property situated in a flood-prone area. To the extent plaintiffs allege that defendants erred in their application of the building code, plaintiffs' remedy was to perfect an appeal or pursue other state remedies. *Mongeau, supra* at 20. And, to the extent plaintiffs' complaint alleges an unconstitutional taking, their remedy is not under the substantive due process component of the Fourteenth Amendment; their remedy is under the Taking Clause of the Fifth Amendment. *Lewis, supra* at 842; *First English I, supra.* Because plaintiffs have not alleged facts to sustain their substantive due process claim, the trial court erred by not granting defendants summary disposition. MCR 2.116(C)(8).

Finally, we address plaintiffs' taking claim. Defendant Robinson Township argues that plaintiffs' taking claim fails because plaintiffs did not exhaust their administrative remedies, the permit process did not entail unreasonable delay, and fluctuations in market value do not constitute a taking of property. Plaintiffs argue that the township's deliberate course of conduct that reduced the value of their property constituted a de facto taking. Plaintiffs also assert that a regulatory taking occurred under the balancing test of *Penn Central Transportation Co v New York City*, 438 US 104; 98 S Ct 2646; 57 L Ed 2d 631 (1978). Plaintiffs assert that the increase of their debt on their home (which exceeded their equity) to meet building code requirements, the decline in market value of their home, and the township's improper motivation to acquire their

property at less than fair market value establish that a taking occurred. We disagree.

Both the Fifth Amendment of the United States Constitution and Const 1963, art 10, § 2, prohibit the taking of private property for public use without just compensation.[2] *Dorman v Clinton Twp*, 269 Mich App 638, 645; 714 NW2d 350 (2006). The Taking Clause of the Fifth Amendment "provides in relevant part that 'private property [shall not] be taken for public use, without just compensation.' " *First English I, supra* at 314. The Taking Clause "is designed not to limit the governmental interference with property rights *per se*, but rather to secure *compensation* in the event of otherwise proper interference amounting to a taking." *Id.* at 315 (emphasis added). Thus, the government is not constitutionally prohibited from taking private property for public use but is only required to pay property owners just compensation when it does so. The government normally "takes" private property through the power of eminent domain and formal condemnation proceedings. See *Dorman, supra* at 645. But a "taking" of private property may occur without formal condemnation proceedings when the government overburdens the property with regulations. *Id.* In general, " 'while property may be regulated to a certain extent, if regulation goes too far it will be recognized as a taking.' " *K & K Constr, Inc v Dep't of Natural Resources*, 456 Mich 570, 576; 575 NW2d 531 (1998) (*K & K Constr I*), quoting *Pennsylvania Coal Co v Mahon*, 260 US 393, 415; 43 S Ct 158; 67 L Ed 322 (1922).

---

[2] Michigan's Constitution provides: "Private property shall not be taken for public use without just compensation therefor being first made or secured in a manner prescribed by law. Compensation shall be determined in proceedings in a court of record." Const 1963, art 10, § 2.

The United States Supreme Court recognizes two types of "categorical takings" regarding "regulatory action that generally will be deemed *per se* takings for Fifth Amendment purposes." *Lingle v Chevron USA Inc*, 544 US 528, 538; 125 S Ct 2074; 161 L Ed 2d 876 (2005). "First, where government requires an owner to suffer a permanent physical invasion of her property— however minor—it must provide just compensation." *Id.* "A second categorical rule applies to regulations that completely deprive an owner of '*all* economically beneficial us[e]' of her property." *Id.*, quoting *Lucas v South Carolina Coastal Council*, 505 US 1003, 1019; 112 S Ct 2886; 120 L Ed 2d 798 (1992) (emphasis in *Lucas*). Apart from "these two relatively narrow categories . . . regulatory takings challenges are governed by the standards set forth in *Penn Central Transp. Co.* v. *New York City*, 438 U.S. 104 [98 S Ct 2646; 57 L Ed 2d 631] (1978)." *Lingle, supra* at 538.[3] The Court in *Penn Central* established a balancing test that requires "a reviewing court [to] engage in an 'ad hoc, factual inquir[y],' centering on three factors: (1) the character of the government's action, (2) the economic effect of the regulation on the property, and (3) the extent by which the regulation has interfered with distinct, investment-backed expectations." *K & K Constr I, supra* at 577, quoting *Penn Central, supra* at 124. The "common touchstone" of all taking analyses is "to identify regulatory actions that are functionally equivalent to the classic taking in which government directly

---

[3] The *Lingle* Court also discussed another type of taking case, not pertinent here, involving the doctrine of unconstitutional conditions— when the government requires a party to give up the constitutional right to receive just compensation for property taken for a public use in exchange for a discretionary benefit that has little or no relationship to the property. *Nollan v California Coastal Comm*, 483 US 825; 107 S Ct 3141; 97 L Ed 2d 677 (1987); *Dolan v City of Tigard*, 512 US 374; 114 S Ct 2309; 129 L Ed 2d 304 (1994).

appropriates private property or ousts the owner from his domain." *Lingle, supra* at 539.

Plaintiffs argue that they have alleged and presented evidence to support a cause of action for a de facto taking. Michigan "recognizes a cause of action, often referred to as an inverse or reverse condemnation suit, for a de facto taking when the state fails to utilize the appropriate legal mechanisms to condemn property for public use." *Peterman v Dep't of Natural Resources*, 446 Mich 177, 187-188; 521 NW2d 499 (1994). A de facto taking "can occur without a physical taking of the property; a diminution in the value of the property or a partial destruction can constitute a 'taking.' " *Merkur Steel Supply, Inc v Detroit*, 261 Mich App 116, 125; 680 NW2d 485 (2004). No exact formula exists to determine when a de facto taking occurs, but there must be some action by the government expressly directed toward the plaintiff's property that effectively limits the use of the property. *Dorman, supra* at 645.

Plaintiffs' de facto taking theory fails because they have neither alleged nor produced any evidence of a causal connection between any deliberate actions of defendants and the decline in the market value of their property. Thus, "a plaintiff alleging inverse condemnation must prove a causal connection between the government's action and the alleged damages." *Hinojosa, supra* at 548. Not only do plaintiffs bear the burden of proving causation in an inverse condemnation action, plaintiffs must also "satisfy this burden by proving that the government's actions were a substantial cause of the decline of its property." *Merkur, supra* at 130. Here, back-to-back devastating floods in 2004 and 2005 damaged plaintiffs' property. Although the township's building officials enforced the state building code when plaintiffs decided to rebuild their home following each

flood, there is no logical causal relationship between compliance with flood-resistant building requirements and any decline in the fair market value that plaintiffs' home may have experienced. The mere reduction in the value of regulated property is insufficient by itself to establish that a compensable taking has occurred. *Penn Central, supra* at 131; *Dorman, supra* at 647.

Likewise, plaintiffs' theory that the township and its trustees possessed the subjective intent to acquire plaintiffs' property for the public's use as a park and as a flood-buffer zone fails to establish a taking because there is no causal nexus to the market value decline of plaintiffs' property. The township's obtaining a FEMA grant after the 2005 flood to provide a mostly federally funded buyout option to flood victims (at 75 percent of preflood damage fair market value) cannot establish a taking because it did not oust plaintiffs from their property or diminish the property's value. The FEMA grant that was never utilized with respect to plaintiffs' property simply was not the functional "equivalent to the classic taking in which government directly appropriates private property or ousts the owner from his domain." *Lingle, supra* at 539. Plaintiffs' property must in fact be taken to invoke constitutional just compensation.

Plaintiffs also claim that they suffered a "categorical" taking per se, i.e., that defendants' actions "completely destroyed" their property. Plaintiffs argue that they were required to either abandon their home or rebuild it at costs far exceeding its value, which essentially deprived them of all its economically beneficial use. Quite the contrary, the undisputed facts establish that plaintiffs twice *chose* to rebuild their home after it was severely damaged by flooding. Because plaintiffs chose to rebuild their home, the township was *required*

to enforce the state building code. This Court has held that a municipality may not be found liable for a taking of private property when it is merely enforcing the requirements of state law. "In order to impose liability on the township, city, or county, the [plaintiffs] must establish that [the] *defendants' regulation* caused the taking." *Frenchtown Charter Twp v City of Monroe*, 275 Mich App 1, 5-6; 737 NW2d 328 (2007) (emphasis in original).

Further, the fact that plaintiffs incurred debt in excess of their equity to rebuild their home does not establish that the township's enforcing the state building code was "functionally equivalent to the classic taking in which government directly appropriates private property or ousts the owner from his domain." *Lingle, supra* at 539. Other than the relatively brief periods that plaintiffs' home was uninhabitable because it required structural repair or did not meet minimal health and sanitation requirements, defendants never prohibited plaintiffs from using their property for the beneficial residential use plaintiffs desired. For those periods when plaintiffs were unable to occupy their property as a residence, they dispute that a "temporary" taking occurred. Rather, plaintiffs argue that the mere fact that complying with building code requirements resulted in a negative equity denied them all economically beneficial use. This claim is without merit because even with a negative equity, plaintiffs are still able to use their property as a residence, and the property still retains some value even if its market value has declined. The fact that using their property as a residence is more costly in the face of the necessity to repair repeated flood damage does not establish a taking. "The Taking Clause does not guarantee property owners an economic profit from the use of their land." *Paragon Properties Co v City of Novi*, 452 Mich

568, 579 n 13; 550 NW2d 772 (1996), citing *Sun Oil Co v Madison Hts*, 41 Mich App 47, 56; 199 NW2d 525 (1972).

Next, plaintiffs argue that genuine issues of material fact exist regarding their regulatory taking claim. They contend that the township was improperly motivated to apply more costly flood-resistant building code requirements. Defendants argue that because plaintiffs failed to pursue available administrative remedies, their taking claim was not ripe for adjudication, and, therefore, the trial court erred by not granting defendants summary disposition on this claim. We agree.

"[A] claim that the application of government regulations effects a taking of a property interest is not ripe until the government entity charged with implementing the regulations has reached a final decision regarding the application of the regulations to the property at issue." *Williamson, supra* at 186. The rule of finality applies to all constitutional "as applied" challenges to land use regulations and ensures that a plaintiff has suffered an " 'actual, concrete injury.' " *Braun v Ann Arbor Charter Twp*, 262 Mich App 154, 160-161; 683 NW2d 755 (2004) (citation omitted). Contrary to plaintiffs' argument, the rule of finality applies even when a plaintiff's constitutional claim is premised under 42 USC 1983. *Paragon Properties, supra* at 576.

The *Williamson* Court discussed whether the Court's decision in *Patsy v Florida Bd of Regents*, 457 US 496; 102 S Ct 2557; 73 L Ed 2d 172 (1982), holding "there is no requirement that a plaintiff exhaust administrative remedies before bringing a § 1983 action," affected the rule of finality when asserting a regulatory taking claim. *Williamson, supra* at 192. The Court observed, "whether administrative remedies must be exhausted is conceptually distinct . . . from the question whether an

administrative action must be final before it is judicially reviewable." *Id*. When an administrative appeal would review whether the government's initial decision was "unlawful or otherwise inappropriate," the failure to exhaust administrative remedies would not preclude a § 1983 action under *Patsy*. *Id* at 193. But where the administrative body is empowered to review the initial agency decision by participating in the decision making regarding the regulation at issue and grant a variance from the regulation's requirements, the initial decision "is not a final, reviewable decision." *Id*. at 194. Thus, *Williamson* requires that before a claim that the imposition of a regulation to a parcel of property has effected a taking is ripe for adjudication, the claimant must have sought "alternative relief, in the form of variances . . . ." *Paragon Properties*, *supra* at 577.

This Court in *Braun*, *supra* at 159, and more recently in *Frenchtown Charter Twp*, *supra* at 7, adopted the rule of finality in *Palazzolo v Rhode Island*, 533 US 606, 620-621; 121 S Ct 2448; 150 L Ed 2d 592 (2001):

> Under our ripeness rules a takings claim based on a law or regulation which is alleged to go too far in burdening property depends upon the landowner's first having followed reasonable and necessary steps to allow regulatory agencies to exercise their full discretion in considering development plans for the property, including the opportunity to grant any variances or waivers allowed by law. As a general rule, until these ordinary processes have been followed the extent of the restriction on property is not known and a regulatory taking has not yet been established.

We conclude that the trial court erred by distinguishing *Williamson* and its progeny and ruling that the CBA could only review "whether or not the regulations were indeed proper." The trial court erred because the CBA

could not only review and determine whether the township building officials were properly applying the building code, it could also grant variances. MCL 125.1515(1) authorizes the CBA to grant variances from a "substantive requirement of the code if the literal application of the substantive requirement would result in an exceptional, practical difficulty to the applicant," provided the conditions of that section are complied with. Moreover, the 2003 Michigan Residential Code severely restricts the discretion of building officials with respect to the application of the code to structures in areas prone to flooding "without the granting of a variance . . . by the board of appeals." R104.10.1. The same code also provides criteria for the CBA when considering granting variances in areas prone to flooding. R112.2.2. In sum, while the CBA could review and grant relief if building officials improperly or erroneously applied the code's requirements, it could also grant variances from the code's requirements. Thus, under *Williamson* and its progeny, because plaintiffs failed to "seek alternative relief, in the form of variances," their taking claim was not ripe for adjudication. *Paragon Properties, supra* at 577.

We also reject the trial court's alternative reasoning for not applying the finality doctrine. The trial court reasoned that because the CBA could not award plaintiffs money damages, the plaintiffs' appeal to the CBA would have been futile. A plaintiff may be excused from the rule of finality if further administrative appeal would be futile. *Palazzolo, supra* at 625-626; *L & L Wine & Liquor Corp v Liquor Control Comm*, 274 Mich App 354, 358; 733 NW2d 107 (2007). Plaintiffs, however, made no showing that an appeal to the CBA would have been futile, i.e., that plaintiffs would not have been able to obtain relief from building code requirements they deemed economically impracticable. "Futility will not

be presumed; courts assume that the administrative process will properly correct alleged errors." *Id.*

The trial court's reasoning "puts the cart before the horse." Plaintiffs cannot bring an action for money damages for a taking of property without just compensation until they have obtained a final regulatory decision, including pursuing available remedies for a variance from the regulations they assert caused them harm. Until the government has rendered a final decision regarding the application of a regulation to a particular property, including whether a variance may be granted, it is impossible to determine if a taking has occurred. *Paragon Properties, supra* at 576-577; *Braun, supra* at 158-159. The Supreme Court explained in *Williamson*:

> [A]mong the factors of particular significance in [applying the *Penn Central* balancing test] are the economic impact of the challenged action and the extent to which it interferes with reasonable investment-backed expectations. Those factors simply cannot be evaluated until the administrative agency has arrived at a final, definitive position regarding how it will apply the regulations at issue to the particular land in question. [*Williamson, supra* at 191.]

In sum, under *Williamson* and its progeny, plaintiffs' regulatory taking claim was not ripe for adjudication because plaintiffs failed to seek alternative relief from the CBA in the form of variances regarding the alleged economically impracticable building code provisions requiring flood-resistant repair and reconstruction. *Paragon Properties, supra* at 577. Plaintiffs are not excused from the rule of finality because they have not demonstrated that an appeal to the CBA would have been futile. *L & L Wine & Liquor Corp, supra* at 358. Consequently, the trial court erred by not granting defendants summary disposition on plaintiffs' taking claim, which was not ripe for judicial review. *Frenchtown Charter Twp, supra* at 7; *Braun, supra* at 161.

We reverse and remand in Docket No. 279020 for the entry of an order of summary disposition in favor of all defendants on all of plaintiffs' claims. Because defendants prevail, they may tax costs pursuant to MCR 7.219.

## II. DOCKET NOS. 279064 AND 279088

Plaintiffs in this case assert the same substantive due process claims as the Cumminses did in Docket No. 279020. For the reasons discussed in that case, the trial court erred by not granting all defendants summary disposition on these claims.

Plaintiffs failed to allege or produce any evidence of conduct on the part of defendants that was so outrageous as to be arbitrary, capricious, and so lacking in rational relationship to a legitimate governmental purpose as to shock the conscious. Defendants did not enact "new regulations," they only interpreted and applied preexisting state building code requirements rationally related to the public's health, safety, and welfare with respect to structures situated in flood-prone areas. At most, defendants erred in their interpretations of the building code, for which plaintiffs had an administrative remedy.

To the extent plaintiffs claim defendants' actions "forced" them to sell their property to Robinson Township at below fair market value, plaintiffs' remedy, if any, is under the Taking Clause of the Fifth Amendment, not the Due Process Clause. But plaintiffs' taking claim also fails for reasons already discussed. We note that those few plaintiffs that voluntarily sold their flood-damaged properties under the FEMA grant program have waived a just compensation claim.[4]

---

[4] Plaintiffs do not specifically argue or present evidence that those plaintiffs who participated in the FEMA grant program actually received

Plaintiffs in this case, however, also assert that the facts and circumstances establish a compensable temporary taking. See *First English I, supra.* We conclude that plaintiffs' temporary regulatory taking claim lacks merit because plaintiffs have neither alleged facts nor produced evidence supporting a claim that extraordinary delay in the permit review process resulted in a temporary taking that required just compensation under the *Penn Central* balancing test. Indeed, plaintiffs concede that it was not the timeliness of defendant's decisions but the expense of complying with flood-resistant building code requirements and plaintiffs' own delay in pursuing hardship appeals that delayed the repair and reoccupation of their homes.

In the seminal case recognizing the concept of a temporary taking, *First English I, supra,* the Court accepted as true the plaintiff's allegation that a temporary flood-plain ordinance enacted after devastating flooding denied it all use of its camp property near a river. *First English I, supra* at 313, 321. The flood destroyed all the plaintiff's buildings situated in the flood plain and the county of Los Angeles adopted an interim ordinance barring the construction or reconstruction of any buildings or structures in a designated flood-protection area, which included the plaintiff's property. *Id.* at 307. The California courts rejected the plaintiff's taking claim on the ground that just compensation could be obtained only prospectively after a

less than fair market value for their property. Fair market value must be determined as of the date the taking occurs. *In re Urban Renewal, Elmwood Park Project,* 376 Mich 311, 318; 136 NW2d 896 (1965). A taking through the FEMA grant could not have occurred until after the 2005 flood. But, under the grant program, compensation was based on a percentage of fair market value of the property *before* the flood damaged it. Moreover, plaintiffs could contractually waive their constitutional right to just compensation. See *Stone v Michigan,* 467 Mich 288, 292; 651 NW2d 64 (2002).

judicial determination that the ordinance violated the plaintiff's constitutional rights. *Id.* at 312. The United States Supreme Court held that once a court has determined that a "taking" has occurred, the Fifth Amendment commands just compensation even though the taking was only temporary. *Id.* at 316, 321. The Court's holding was limited: "We merely hold that where the government's activities have already worked a taking of all use of property, no subsequent action by the government can relieve it of the duty to provide compensation for the period during which the taking was effective." *Id.* at 321. The Court further limited its holding by specifically noting that its analysis did not address "the quite different questions that would arise in the case of *normal delays in obtaining building permits*, changes in zoning ordinances, variances, and the like which are not before us." *Id.* (emphasis added). On remand, the California Court of Appeal held that the plaintiff's taking claim was properly dismissed because, among other reasons, the county ordinance had not deprived the plaintiff of all use of its property and because the 22-month total moratorium was a reasonable period to permit the county to study the problems associated with development in the flood-prone area and devise "a permanent ordinance which would allow only safe uses and the construction of safe structures in and near the river bed." *First English Evangelical Lutheran Church v Los Angeles Co*, 210 Cal App 3d 1353, 1373; 258 Cal Rptr 893 (1989) (*First English II*).

The Supreme Court rejected a "temporary taking" claim involving a categorical ban on all residential development for a period of 32 months in *Tahoe-Sierra Preservation Council, Inc v Tahoe Regional Planning Agency*, 535 US 302; 122 S Ct 1465; 152 L Ed 2d 517 (2002). The United States Court of Appeals for the

Ninth Circuit had "held that because the regulations had only a temporary impact on [the] petitioners' fee interest in the properties, no categorical taking had occurred." *Id.* at 318. The Supreme Court rejected arguments for a bright-line rule when considering claims of regulatory takings, noting that determining whether a "regulatory taking" has occurred requires the "ad hoc" factual inquiry of the *Penn Central* balancing test. *Id.* at 325-327. In doing so, courts must focus not only on " 'the parcel as a whole,' " *id.* at 327, quoting *Penn Central, supra* at 130-131, but also on the temporal dimensions of the owner's interest. *Tahoe-Sierra, supra* at 331-332. With respect to the temporal aspects of governmental regulation and property interests, the Court opined:

> Logically, a fee simple estate cannot be rendered valueless by a temporary prohibition on economic use, because the property will recover value as soon as the prohibition is lifted. Cf. *Agins* v. *City of Tiburon*, 447 U.S. [255,] 263, n. 9 [100 S Ct 2138; 65 L Ed 2d 106 (1980)] ("Even if the appellants' ability to sell their property was limited during the pendency of the condemnation proceeding, the appellants were free to sell or develop their property when the proceedings ended. Mere fluctuations in value during the process of governmental decisionmaking, *absent extraordinary delay,* are 'incidents of ownership. They cannot be considered as a "taking" in the constitutional sense' " (quoting *Danforth* v. *United States*, 308 US 271, 285 [60 S Ct 231; 84 L Ed 240] (1939))). [*Id.* at 332 (emphasis added).]

The *Tahoe-Sierra* Court also observed that to require just compensation for " 'normal delays in obtaining building permits, changes in zoning ordinances, variances, and the like,' " *id.* at 335, quoting *First English I, supra* at 321, would affect other temporary regulations "that have long been considered permissible exercises of the police power." *Tahoe-Sierra, supra* at 335.

"A rule that required compensation for every delay in the use of property would render routine government processes prohibitively expensive or encourage hasty decisionmaking." *Id. Tahoe-Sierra* teaches "that requiring a governmental agency to compensate a property owner for the loss of value while considering applications for permits and variances under a land-use regulatory scheme would either become cost-prohibitive or lead to governmental agencies making hasty, presumably haphazard, decisions." *K & K Constr, Inc v Dep't of Environmental Quality*, 267 Mich App 523, 536 n 17; 705 NW2d 365 (2005) (*K & K Constr II*).

Comparing the length of total moratoriums held not to constitute temporary regulatory takings in *First English* and *Tahoe-Sierra*, we conclude no extraordinary delay occurred in the permit review process here. Further, requiring plaintiffs to obtain building and occupancy permits cannot itself constitute a taking of property. *Bond v Dep't of Natural Resources*, 183 Mich App 225, 231; 454 NW2d 395 (1989), citing *United States v Riverside Bayview Homes, Inc*, 474 US 121, 126-127; 106 S Ct 455; 88 L Ed 2d 419 (1985). "[T]he very existence of a permit system implies that permission may be granted, leaving the landowner free to use the property as desired." *Id.* at 127. Indeed, the essence of plaintiffs' claim is not that they would not be allowed to use their property for residential purposes but that they had to comply with flood-resistant building code requirements that imposed financial hardship. This claim does not establish a temporary regulatory taking under the *Penn Central* balancing test.

The *Penn Central* balancing test requires examining (1) the character of the government's action, (2) the economic effect of the regulation on the property, and (3) the extent by which the regulation has interfered

with distinct, investment-backed expectations. The relevant inquiries regarding the character of the government's action is whether it singles plaintiffs out to bear the burden for the public good and whether the regulation being challenged "is a comprehensive, broadly based regulatory scheme that burdens and benefits all citizens relatively equally." *K & K Const II, supra* at 559. Here, the township enforced the statewide building code and its provisions regarding flood-plain construction that apply equally to all landowners with property similarly situated in flood-prone areas. Thus, plaintiffs are both benefited and burdened like other similarly situated property owners; "this factor weighs heavily against finding that a compensable regulatory taking has occurred here." *Id.* at 563.

The economic effect of enforcing the building code requirements for flood-resistant construction also precludes a conclusion that a temporary taking occurred. Plaintiffs' only claim is that such construction is more costly than construction that is not flood-resistant. But, as noted already, "[t]he Taking Clause does not guarantee property owners an economic profit from the use of their land." *Paragon Properties, supra* at 579 n 13. Applying this principle to the present case means that the Taking Clause does not guarantee that a property owner may choose the least costly building materials or methods to repair or rebuild property that has been damaged in a flood. Moreover, plaintiffs who appealed to the CBA obtained relief from the economic hardship the regulations might impose within a reasonable period. This factor does not support finding a temporary taking occurred in this case.

The last *Penn Central* balancing-test factor examines the extent to which the governmental regulation has interfered with plaintiffs' distinct, investment-backed

expectations. Here, plaintiffs do not assert that their property is used to make a profit; rather, they use their property for residential purposes. Because their homes are situated in a flood plain that experiences frequent flooding, plaintiffs could have no reasonable expectation that their property would not periodically experience flood damage necessitating costly repairs. See *Dorman, supra* at 648-649 (holding that the plaintiff could not establish that a zoning regulation interfered with "distinct, investment-backed expectations" when the zoning regulation was consistent with the neighborhood and "[a] simple visual inspection of the area would have placed plaintiff on notice that his proposed development was inconsistent with the character of the neighborhood"); see, also, *K & K Constr II, supra* at 558 (the plaintiffs knowingly purchased regulated wetlands so "it [was] clear that there [had] not been a significant negative effect on [the] plaintiffs' *reasonable* investment-backed expectations") (emphasis in original). Similarly, the application of flood-resistant building code requirements to property situated in a flood-prone area cannot have interfered with plaintiffs' *reasonable* "distinct, investment-backed expectations."

In sum, plaintiffs' temporary regulatory taking claim fails as a matter of law because plaintiffs have neither alleged nor produced any evidence that the government extraordinarily delayed its responses and decisions following the flooding that damaged plaintiffs' homes and rendered them temporarily uninhabitable. Plaintiffs simply have not created a question of fact under the *Penn Central* balancing test that a temporary taking requiring just compensation occurred. Consequently, the trial court erred by not granting defendant township summary disposition.

We reverse and remand in Docket Nos. 279064 and 279088 for the entry of an order of summary disposition in favor of all defendants on all of plaintiffs' claims. Because defendants prevail, they may tax costs pursuant to MCR 7.219. We do not retain jurisdiction.