# STATE OF MICHIGAN

# COURT OF APPEALS

EMMANUEL BOYKIN,

        Plaintiff-Appellant,

v

GENERAL MOTORS, LLC,

        Defendant-Appellee.

UNPUBLISHED
December 4, 2018

No. 338594
Wayne Circuit Court
LC No. 15-013865-CB

Before: O'BRIEN, P.J., and TUKEL and LETICA, JJ.

PER CURIAM.

Plaintiff appeals as of right the trial court's order denying his motion for leave to file a second amended complaint. Plaintiff also challenges the trial court's prior order granting defendant's motion for summary disposition. For the reasons provided below, we affirm.

This case arises from a contract dispute between plaintiff, and defendant regarding plaintiff's employment and ownership of a General Motors (GM) dealership. Plaintiff had been employed by defendant in several different positions. In 2001, plaintiff, who is African-American, participated in defendant's Minority Dealer Development Program (MDDP). In the summer of 2011, after having worked in various GM dealerships, plaintiff expressed an interest in purchasing Mack Buick GMC in Ann Arbor with a fellow GM dealer because defendant had expressed its desire to sell it to someone who participated in the MDDP. Defendant allegedly informed plaintiff that it would sell plaintiff the dealership if he worked with Maureen LaFontaine, the wife of an existing GM dealer.

Plaintiff and the LaFontaine Automotive Group (LAG) bid to purchase the dealership in the fall of 2011, and defendant accepted their bid. On January 3, 2012, plaintiff and LAG entered into an employment agreement, naming plaintiff as the dealer operator of the dealership. The employment agreement provided that plaintiff would be employed as the dealer operator under defendant's standard dealer sales and service agreement (Dealer SSA). On March 19, 2012, plaintiff and LAG entered into a letter agreement with defendant, where plaintiff was named as the proposed dealer operator.

The dealership was sold to LAG on April 5, 2012, pursuant to the Dealer SSA between LAG and defendant. Plaintiff successfully operated the dealership for approximately two years. But in March 2014, LAG sought to separate from plaintiff. Defendant attempted to purchase the

-1-

dealership from LAG and sell it to plaintiff, to maintain its minority-owned status, but the sale fell through. LAG ultimately requested that plaintiff stop coming to the dealership, and plaintiff complied "to avoid an untenable situation." Plaintiff asked defendant to prevent his exclusion from the dealership, but defendant asserted that such action was not subject to the Dealer SSA. LAG subsequently terminated plaintiff's employment on September 11, 2014.

In his first amended complaint against defendant, plaintiff alleged a single count of breach of contract based on the letter agreement. Plaintiff asserted that defendant breached the letter agreement by "failing to take action to meet its contractual obligations and ensure that Mr. Boykin would be the dealer operator and part owner of the Dealership." Defendant thereafter moved for summary disposition pursuant to MCR 2.116(C)(8), and the trial court granted the motion. While the motion was pending, plaintiff also moved to amend his complaint a second time, but the trial court ultimately denied that motion.

## I. SUMMARY DISPOSITION

Plaintiff argues that the trial court erred when it granted defendant summary disposition because it improperly interpreted the letter agreement to place obligations on plaintiff but not on defendant. We disagree.

Defendant moved for summary disposition pursuant to MCR 2.116(C)(8). The trial court granted defendant's motion because plaintiff failed to state a claim for breach of contract based on the lack of any obligation of defendant to ensure plaintiff's roles with the dealership. This Court reviews a motion for summary disposition de novo. *Gorman v American Honda Motor Co, Inc*, 302 Mich App 113, 115; 839 NW2d 223 (2013). A motion for summary disposition under MCR 2.116(C)(8) is granted if the party opposing the motion " 'has failed to state a claim upon which relief can be granted.' " *Dalley v Dykema Gossett*, 287 Mich App 296, 304; 788 NW2d 679 (2010), quoting MCR 2.116(C)(8). A trial court's decision under MCR 2.116(C)(8) is based solely on the pleadings. *Dalley*, 287 Mich App at 304. Thus, "[a] party may not support a motion under subrule (C)(8) with documentary evidence such as affidavits, depositions, or admissions." *Id.* at 305. This Court "accepts all well-pleaded factual allegations as true and construes them in the light most favorable to the nonmoving party." *Id.* at 304-305. Summary disposition under MCR 2.116(C)(8) is only proper when "the claim 'is so clearly unenforceable as a matter of law that no factual development could possibly justify a right of recovery.' " *Id.* at 305 (citation omitted).

As an initial matter, we note that when defendant filed its motion for summary disposition, it attached the letter agreement, the Dealer SSA, and the employment agreement. Defendant acknowledged that these were not attached to the complaint, but it claimed that pursuant to MCR 2.113(F)(1),[1] they nevertheless should be considered as part of the pleadings

---

[1] MCR 2.113 was amended, effective September 1, 2018. Although we cite to the prior version of MCR 2.113(F) that was in effect at the time of the lower court proceedings, we note that the content of that part of the rule is now codified at MCR 2.113(C). The pre-amendment version of MCR 2.113(F) provided, in pertinent part:

because plaintiff relied on them without attaching them. In his response to defendant's motion, plaintiff did not object to the inclusion of these documents. In fact, plaintiff himself cited to these very same documents in support of his arguments opposing defendant's motion. The trial court also relied on these documents in rendering its decision. On appeal, no party claims that it was improper to consider the documents in the context of a summary disposition motion brought under MCR 2.116(C)(8). Accordingly, we accept without deciding that these documents are properly considered for purposes of defendant's summary disposition motion.

The letter agreement stated that it was in response to plaintiff's request that defendant enter into a Dealer SSA with LAG, naming plaintiff the dealer operator. The "proposed dealer company" (LAG) and the "proposed dealer operator" (plaintiff) were referred to as the "Applicants" therein. After plaintiff and LAG "fulfill[ed] the requirements below, and subject to all terms, conditions and requirements" of the letter agreement, defendant would offer a Dealer SSA. Below this paragraph was a list of bullet points pertaining to certain documents that defendant needed from plaintiff and LAG, including the articles of organization and tax documentation. Below the bullet points were several numbered paragraphs, including the following:

> 3. <u>Membership Interests:</u> Proposed Dealer Company has to be personally and directly owned by Proposed Dealer Operator [plaintiff] and others on a basis that is acceptable to [defendant]. Proposed Dealer Operator [plaintiff] shall own and continue to own, on a personal and direct basis, an unencumbered equity interest of at least fifteen percent (15%).

The other numbered paragraphs required the "Applicants" to complete other requirements, such as obtaining a line of credit and all necessary licenses. The last numbered paragraphs, 20 and 21, read as follows:

> 20. <u>Dealer Agreement:</u> Applicants shall cause Proposed Dealer Company to fulfill all of the terms and conditions set forth in the [Dealer SSA]. Upon execution of the [Dealer SSA] by Proposed Dealer Company, all of the

---

(1) If a claim or defense is based on a written instrument, a copy of the instrument or its pertinent parts must be attached to the pleading as an exhibit unless the instrument is

\* \* \*

(b) in the possession of the adverse party and the pleading so states[.]

\* \* \*

(2) An exhibit attached or referred to under subrule (F)(1)(a) or (b) is a part of the pleading for all purposes.

obligations set forth in this Letter Agreement are incorporated by reference into the [Dealer SSA].

> 21. Dealer Operator/Assignment Limitations: [Defendant] executes this Letter Agreement in reliance upon the personal services, business experience and financial qualifications of [plaintiff] as Proposed Dealer Operator. Accordingly, Applicants may not assign, transfer or convey this Letter Agreement, in whole or in part, without the express written consent of [defendant]. Moreover, [defendant] shall not be obligated, under any circumstances, to enter into the [Dealer SSA] with Proposed Dealer Company, unless Proposed Dealer Operator is named dealer operator thereof in accordance with the terms of this Letter Agreement. Although this Letter Agreement is entered into in reliance upon the personal services, business experience and financial qualifications of the Proposed Dealer Operator, Proposed Dealer Company is the only party to the [Dealer SSA] with [defendant]. Upon execution of the [Dealer SSA] as contemplated by this Letter Agreement, the provisions of the [Dealer SSA] shall supersede the inconsistent terms, conditions and requirements of this Letter Agreement, except that [defendant] may continue to rely upon the representations and promises of the Applicants contained in this Letter Agreement.

The letter agreement ended with the provision that "[t]here are no other agreements or understandings, written or verbal, between the parties with regard to the matters covered by this Letter Agreement." The letter agreement was signed by plaintiff on March 19, 2012.

Contracts are enforced according to their terms. *Rory v Continental Ins Co*, 473 Mich 457, 468; 703 NW2d 23 (2005). This Court gives the words used in contractual language their plain and ordinary meanings. *Wilkie v Auto-Owners Ins Co*, 469 Mich 41, 47; 664 NW2d 776 (2003). "[A]n unambiguous contractual provision is reflective of the parties' intent as a matter of law, and [i]f the language of the contract is unambiguous, we construe and enforce the contract as written." *Coates v Bastian Bros, Inc*, 276 Mich App 498, 503; 741 NW2d 539 (2007) (quotation marks and citation omitted). Contract language is ambiguous when there are two provisions in irreconcilable conflict, or when a term is susceptible to more than one meaning. *Id*. Courts must give effect to every word, phrase, and clause in a contract, and avoid interpreting a contract to render any part surplusage or nugatory. *Wells Fargo Bank, NA v Cherryland Mall Ltd P'ship*, 295 Mich App 99, 111; 812 NW2d 799 (2011). Contracts must be read as a whole. *Detroit Pub Schs v Conn*, 308 Mich App 234, 251-252; 863 NW2d 373 (2014).

The trial court did not err when it determined that plaintiff failed to establish a contractual obligation on behalf of defendant to ensure that plaintiff remained a dealer operator and owner of the dealership. The letter agreement contained several requirements that plaintiff and LAG had to fulfill before defendant would offer a Dealer SSA for the dealership. When read as a whole, it is clear that plaintiff's and LAG's obligations were not limited to the bullet points contained on the first two pages; the numbered paragraphs also included conditions and requirements as a prerequisite to defendant offering the Dealer SSA. While it is true that paragraphs 1, 2, and 4 use the language "Applicants shall cause" and paragraph 3 does not, this does not mean that paragraph 3 imposes an obligation on defendant, rather than plaintiff and

-4-

LAG. Rather, when paragraph 3 is read in the context of the entire letter agreement, it is clear that it is a requirement that plaintiff and LAG had to fulfill to be issued the Dealer SSA.

Plaintiff focuses on the language in the second sentence of paragraph 3 that plaintiff "shall own and continue to own" 15 percent of the dealership. However, that paragraph also provided that the dealership had to be owned by the dealer operator and others "on a basis acceptable to [defendant]." It then provided that the proposed dealer operator shall own at least 15 percent. Thus, the 15 percent ownership requirement is a part of the acceptable basis of ownership to defendant. As determined by the trial court, there is no indication in this paragraph that defendant was obligated to ensure that plaintiff maintained this ownership interest. Indeed, there is no indication in the entirety of the letter agreement imposing this obligation on defendant. Rather, it was an obligation of plaintiff and LAG to maintain a 15 percent ownership interest in the dealer operator as an acceptable basis of ownership for defendant.

Further, contrary to plaintiff's assertion, his interpretation of the contract was not "at least reasonable," entitling him to reversal of the order granting defendant summary disposition. He argues that his interpretation was consistent with the attendant facts and circumstances, referring to the fact that defendant wanted to claim minority ownership of the dealership and needed plaintiff's participation to do so. However, as noted by the trial court at the motion hearing, there was no requirement in the letter agreement to maintain minority ownership. Thus, it was not a term of the contract to be enforced. See *Rory*, 473 Mich at 468.

Accordingly, the trial court did not err when it granted defendant's motion for summary disposition.[2]

## II. LEAVE TO FILE SECOND AMENDED COMPLAINT

On appeal, plaintiff argues that the trial court abused its discretion when it denied his motion to file a second amended complaint. Specifically, plaintiff asserts that his fraud and

---

[2] To the extent that consideration of these documents is erroneous under MCR 2.116(C)(8), this Court would review the motion under MCR 2.116(C)(10). See *Kefgen v Davidson*, 241 Mich App 611, 616; 617 NW2d 351 (2000) (stating that when a motion for summary disposition is brought under MCR 2.116(C)(8) but the parties and the trial court considered documentary evidence beyond the pleadings, the motion is treated as having been decided under MCR 2.116(C)(10)). In doing so, the evidence submitted is considered in a light most favorable to the nonmoving party to determine if there are any triable issues. *Id.* The motion is properly granted if there are no genuine issues of fact and the moving party is entitled to judgment as a matter of law. *Anzaldua v Neogen Corp*, 292 Mich App 626, 630; 808 NW2d 804 (2011). For the same reasons discussed, there would be no genuine issue of fact that the letter agreement did not impose an obligation on defendant to ensure that plaintiff maintained his employment. Thus, summary disposition would be warranted under MCR 2.116(C)(10) as well.

unjust enrichment claims were not futile and that he should be able to reassert his breach of contract claim.[3] We disagree.

"[D]ecisions granting or denying motions to amend pleadings[] are within the sound discretion of the trial court and reversal is only appropriate when the trial court abuses that discretion." *Weymers v Khera*, 454 Mich 639, 654; 563 NW2d 647 (1997). An abuse of discretion occurs when the trial court's decision falls outside the range of principled outcomes. *Woods v SLB Property Mgt, LLC*, 277 Mich App 622, 625; 750 NW2d 228 (2008).

Plaintiff filed his motion for leave to file a second amended complaint pursuant to MCR 2.118(A)(2). MCR 2.118(A)(2) provides that leave to amend a pleading "shall be freely given when justice so requires." If a trial court grants summary disposition pursuant to MCR 2.116(C)(8), the court must give the parties an opportunity to amend their pleadings pursuant to MCR 2.118, unless the amendment would be futile. MCR 2.116(I)(5); *Weymers*, 454 Mich at 658. If the trial court denies the motion to amend, it must specify its reasoning, and failure to do so requires reversal unless the amendment would be futile. *Sharp v City of Lansing*, 238 Mich App 515, 522; 606 NW2d 424 (1999), aff'd 464 Mich 792 (2001). A grant of summary disposition does not necessarily preclude amendment of a complaint. *Id*. at 523.

## A. ACTIONS IN TORT

Plaintiff claims that the trial court abused its discretion when it determined that the letter agreement barred plaintiff's tort claims because these claims were "alternative" claims asserted by plaintiff in the event that the court determined that the letter agreement contained no continuing obligation of defendant to ensure plaintiff's roles with the dealership. We disagree.

"[A] 'tort' is an act that has long been understood as a civil wrong that arises from the breach of a legal duty other than the breach of a contractual duty." *In re Bradley Estate*, 494 Mich 367, 381; 835 NW2d 545 (2013). An action in tort cannot be maintained where a contract exists, unless a duty separate and distinct from the contractual obligation is established. *Sherman v Sea Ray Boats, Inc*, 251 Mich App 41, 52; 649 NW2d 783 (2002). When a lawsuit arises from a breach of a promise, it is a lawsuit for breach of contract. *Hart v Ludwig*, 347 Mich 559, 563; 79 NW2d 895 (1956).

The trial court did not err when it determined that plaintiff failed to state a cause of action in tort. Plaintiff's fraud and unjust enrichment claims are based on his assertion that defendant had a promise to fulfill under the letter agreement and that defendant did not perform the promise. The promise alleged in plaintiff's proposed fraud claim was that defendant "promised"

---

[3] Plaintiff does not assert on appeal that he should be allowed to file an amended complaint to include the remaining claims alleged in his proposed second amended complaint, including breach of fiduciary duty, tortious interference with a business relationship or expectancy, and silent fraud. Consequently, any issues related to those claims are abandoned. See *Froling v Carpenter*, 203 Mich App 368, 373; 512 NW2d 6 (1993) (stating that the appellants' failure to argue an issue in their brief on appeal results in abandonment of the issue).

that plaintiff would own and operate the dealership with defendant's support, but defendant did not intend to keep this promise, and plaintiff relied on this promise when he invested in the dealership. In his unjust enrichment claim, plaintiff asserted that defendant did nothing in response to plaintiff's termination, despite its "promises" to plaintiff, and defendant's rights and remedies contained in the Dealer SSA. Thus, as an initial matter, the trial court did not abuse its discretion when it denied plaintiff's motion for leave to amend his complaint because plaintiff cannot establish his claims in tort. Therefore, amendment would be futile.

## B. FRAUD

Plaintiff argues that his fraud claim was not futile because he specifically identified defendant's misrepresentations, and he reasonably relied on the misrepresentations to his detriment. We disagree.

Plaintiff's fraud claim in his proposed second amended complaint asserted that (1) defendant promised that plaintiff would own and operate the dealership with defendant's support, (2) defendant did not intend to keep these promises, (3) defendant made them with the intent that plaintiff would invest in the dealership, and (4) plaintiff relied on them when he invested and relinquished other business opportunities. Common-law fraud requires proof that

> (1) the defendant made a material representation; (2) the representation was false; (3) when the defendant made the representation, the defendant knew that it was false, or made it recklessly, without knowledge of its truth as a positive assertion; (4) the defendant made the representation with the intention that the plaintiff would act upon it; (5) the plaintiff acted in reliance upon it; and (6) the plaintiff suffered damage. [*Cummins v Robinson Twp*, 283 Mich App 677, 695-696; 770 NW2d 421 (2009) (citation omitted).]

A fraud claim must be based on a false statement related to a past or existing fact. *Id*. at 696. Promises for the future are contractual, and do not support a claim of fraud. *Id*.

Plaintiff failed to establish that defendant made a false material representation related to a past or existing fact. *Id*. Plaintiff argues that the misrepresentation was that defendant promised plaintiff that he "would" be the dealer operator and owner and that defendant "would" support him in these roles. Because this is a promise related to the future, it is contractual, and therefore, does not support a claim of fraud. *Id*. In addition, plaintiff served as the dealer operator and owner for a period of time, so this "promise" by defendant was fulfilled.

Moreover, to be actionable, a party's reliance on a misrepresentation in a fraud action must be reasonable. *Bergen v Baker*, 264 Mich App 376, 389; 691 NW2d 770 (2004). Plaintiff cannot establish that he reasonably relied upon any alleged misrepresentation by defendant. Plaintiff claims that he reasonably relied on defendant's promises by investing and operating the dealership. However, plaintiff cannot argue that he reasonably relied on defendant's purported misrepresentations to think that he would be guaranteed to be the dealership's owner and dealer operator. This is so because although plaintiff asserted that some of defendant's employees made oral promises to him, the letter agreement expressly provided that there were "no other

agreements or understandings, written or verbal" between the parties; thus, plaintiff could not reasonably rely on any of the allegedly false representations.

As a result, the trial court did not abuse its discretion when it denied plaintiff's motion for leave to file an amended complaint regarding his fraud claim. Because plaintiff could not establish the elements of his fraud claim, amendment would be futile.

## C. UNJUST ENRICHMENT

The trial court determined that amendment of plaintiff's complaint to include an unjust enrichment claim would be futile because the letter agreement and Dealer SSA were express written contracts that covered the same subject matter as this claim. Plaintiff argues that this was an abuse of discretion because his unjust enrichment claim arises from the benefit that defendant enjoyed after plaintiff was removed from his roles. Plaintiff alleges that defendant continued to enjoy the benefits of claiming the dealership as minority-owned after defendant knew that plaintiff's employment was terminated.

To sustain a claim for unjust enrichment, plaintiff must demonstrate that defendant received a benefit from plaintiff, and an inequity resulted to plaintiff as a result of defendant obtaining that benefit. *Liggett Restaurant Group, Inc v City of Pontiac*, 260 Mich App 127, 137; 676 NW2d 633 (2003). If these elements are established, a contract is implied to prevent unjust enrichment. *Belle Isle Grill Corp v City of Detroit*, 256 Mich App 463, 478; 666 NW2d 271 (2003). However, "a contract cannot be implied when an express contract already addresses the pertinent subject matter." *Liggett Restaurant Group, Inc*, 260 Mich App at 137. Here, the letter agreement and the Dealer SSA were express written contracts that covered the same subject matter as plaintiff's unjust enrichment claim. Plaintiff alleged in his proposed second amended complaint that, "[w]hen the Dealership terminated [plaintiff's] employment, [defendant] did nothing despite its promises to [plaintiff] and its rights and remedies under the [Dealer SSA]." Thus, plaintiff's unjust enrichment claim was based on termination of plaintiff's employment. Termination of plaintiff's employment was provided for in the employment agreement, as well as in the Dealer SSA. Although the minority-owned status of the dealership was not referenced in any of the contracts, the subject matter of plaintiff's unjust enrichment claim was his termination, which was expressly provided for in the documents. Therefore, amendment of plaintiff's unjust enrichment claim was futile, and the trial court did not err when it denied plaintiff's motion for leave to file a second amended complaint.

## D. BREACH OF CONTRACT

Plaintiff briefly asserts in his brief on appeal that, should he be permitted to file a second amended complaint, he be allowed to include his breach of contract claim, as the trial court erred

when it dismissed that claim because plaintiff's interpretation of the contract was reasonable. But because we have determined that the trial court did not err in dismissing the breach of contract claim, allowing the claim to continue in an amended pleading would, by definition, be futile.

Affirmed. Defendant, as the prevailing party, may tax costs pursuant to MCR 7.219.

/s/ Colleen A. O'Brien
/s/ Jonathan Tukel
/s/ Anica Letica