*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

DARCY WEIDMAN,

        Plaintiff-Appellant,

v

HOME-OWNERS INSURANCE COMPANY and
ANGELIA JULIANA BARDO,

        Defendants-Appellees.

UNPUBLISHED
April 13, 2026
11:06 AM

No. 371332
Genesee Circuit Court
LC No. 22-117836-NI

Before: SWARTZLE, P.J., and O'BRIEN and BAZZI, JJ.

BAZZI, J. (*dissenting*).

In this case arising out of a motor vehicle accident, plaintiff, Darcy Weidman, appeals as of right the trial court's stipulated order dismissing plaintiff's claim for no-fault[1] personal protection insurance (PIP) benefits against defendant Home-Owners Insurance Company (Home-Owners), with prejudice.[2] Plaintiff further contests the trial court's orders granting defendant Angelia Juliana Bardo summary disposition of plaintiff's negligence claims under MCR 2.116(C)(10) (no genuine issue of material fact), denying plaintiff summary disposition under MCR 2.116(I)(2) (opposing party entitled to immediate judgment), and granting Home-Owners summary disposition of plaintiff's claim for underinsured motorist (UIM) benefits under MCR 2.116(C)(10). Because I would affirm in part, reverse in part, and remand for further proceedings, I dissent.

---

[1] MCL 500.3101 *et seq*.

[2] Although this is a stipulated order, I note that plaintiff does not substantively contest the dismissal of her PIP claim against Home-Owner. Rather, the referenced order is the order appealed as of right because it constitutes a final order under MCR 7.202(6)(a)(i) and expressly preserved plaintiff's appellate rights concerning the trial court's earlier rulings on various summary-disposition motions, which plaintiff now challenges on appeal.

## I. BASIC FACTS AND PROCEDURAL HISTORY

On September 3, 2021, at approximately 9:00 a.m., plaintiff and Bardo were driving their respective vehicles westbound on Crosby Road, a two-lane road with no middle turn lane, when plaintiff's right headlight area struck the rear driver's side of Bardo's vehicle. Plaintiff's vehicle came to rest on the road where the collision occurred, while Bardo's vehicle spun around and came to rest in her yard or driveway, facing the opposite direction. Plaintiff alleged that she sustained serious injuries in the accident.

During her deposition testimony, Bardo asserted that on the day of the accident, she was driving her Pontiac Grand Am to her house, which was the third house west of the intersection of Genesee and Crosby Roads. According to Bardo, as she approached the Genesee-Crosby intersection, she looked in her rearview mirror and did not see a vehicle behind her, turned left onto the westbound lane of Crosby Road, and proceeded toward her residence. Bardo expressed that, because her house was the third one from the intersection, she did not "have to speed up or slow down very much to start turning" into her driveway. Bardo further recalled that as she started the right-hand turn into her driveway, plaintiff rear-ended her. Bardo additionally noted that she "probably . . .wasn't completely stopped" as she turned, but was "going four miles per hour maybe at the turn, three . . . . Not very fast."

Contrastingly, plaintiff testified that she was driving her Chevrolet Traverse on Genesee Road the day of the subject incident to her workplace, and turned left at the Genesee-Crosby intersection onto the westbound lane of Crosby Road. At that time, according to plaintiff, it was "clear and sunny," and there was nothing obstructing her view.[3] Plaintiff asserted that she was not using, or glancing at, her phone, was "looking down the road," and had both hands on the steering wheel. Plaintiff detailed that, after turning onto Crosby Road, she started to accelerate, yet remained below the posted speed limit of 45 miles per hour, when she noticed Bardo's vehicle "at a stop" in the middle of the westbound lane, "not very far off Genesee," and their vehicles were "close." Per plaintiff, when she noticed that Bardo's vehicle was stopped, she swerved left and braked, but was unable to avoid rear-ending Bardo.

Plaintiff further expressed that she did not "slow [her] vehicle to a stop" to avoid the collision because she did not know Bardo was stopped in the roadway as neither Bardo's brake lights nor her turn signal, were illuminated. Plaintiff contended that the absence of operable brake lights or turn signal on Bardo's stopped vehicle caused the accident, testifying that she could not have done anything differently to avoid the collision. Bardo disputed this contention, stating that she had not experienced any issue with her turn signals or brake lights, and that she knew her turn signals were working at the relevant time.[4]

---

[3] There is no dispute that the accident occurred in daylight, and there was no evidence of morning glare, or any other condition that could have affected plaintiff's ability to see the roadway.

[4] There was conflicting testimony regarding whether Bardo admitted at the accident scene that her turn signals were not working.

Responding Police Officer John Jackson testified that plaintiff had a duty to stop if there was an object in the road, and that it was a violation of Michigan law to drive a vehicle without properly functioning brake lights or turn signals. Officer Jackson further expressed that he had determined, using Google Earth, that the accident location was 412 feet west of the Genesee-Crosby intersection. Officer Jackson explained that he did not issue a ticket to either driver because he "couldn't determine if the brake lights were actually out" on Bardo's damaged vehicle. He believed both parties were at fault for the accident.

Officer Jackson asserted that whether plaintiff maintained sufficient time to stop to avoid the collision depended on several factors, including plaintiff's speed, how close she was traveling behind Bardo's vehicle, and if Bardo "slammed on the brakes." Officer Jackson additionally testified as follows:

> *Q*. Now, you were asked by the attorney why couldn't someone stop in 412 feet, and you said it could be speed, could be slammed on brakes. You weren't able to give all the factors. But could one of the factors be brake lights not working and the person not being able to perceive whether the other person was stopped?
>
> *A*. Absolutely.
>
> *Q*. And if their turn indicators weren't working and they were stopping to turn, the same would be true the person might not be able to perceive a person turning, because they are stopping and turning without a turn indicator?
>
> *A*. Yes.
>
> *Q*. And is that why you didn't issue tickets to either party because . . .you felt both had fault in this incident.
>
> *A*. Yes.

Officer Jackson did not offer an opinion regarding plaintiff's vehicle speed, or whether Bardo's vehicle was turning, at the moment of the accident.

Plaintiff commenced the underlying action, asserting third-party negligence claims against Bardo, and a breach-of-contract claim against Home-Owners for failing to pay certain first-party PIP benefits, in addition to a claim for UIM benefits. Plaintiff asserted that Bardo was presumptively negligent by operating her vehicle with no functional brake lights or turn signal, in violation of MCL 257.697 and several other motor-vehicle statutes, which resulted in serious

impairments of plaintiff's body function. Plaintiff further contended that she was entitled to UIM coverage for damages in excess of Bardo's policy's liability coverage.[5]

Bardo moved for summary disposition under MCR 2.116(C)(10), arguing that plaintiff was presumptively negligent for violating MCL 257.627(1) by failing to maintain a speed that would permit her to stop within an "assured, clear distance" of Bardo's vehicle,[6] and MCL 257.402(a) by rear-ending Bardo's vehicle.[7] Bardo further asserted that plaintiff could not rebut her presumptive negligence by invoking the sudden-emergency doctrine. Bardo additionally contended there was no genuine factual dispute that plaintiff was *not* confronted with a sudden emergency when the accident occurred, because a stopped vehicle on a road in a residential area was not an unusual or unexpected occurrence, regardless of the operability of Bardo's brake lights or turn signals. Bardo also argued that her vehicle's presence on the roadway was clearly visible to plaintiff for sufficient time for plaintiff to avoid the collision, considering the accident occurred under clear and sunny conditions, plaintiff had an unobstructed view of the road for 412 feet, and there was no evidence that Bardo had stopped suddenly. Bardo advanced that reasonable minds could not differ that plaintiff was more than 50% at fault for the accident, thereby precluding plaintiff from recovering damages in tort under MCL 500.3135(2)(b).[8] Home-Owners concurred with Bardo's motion,

---

[5] Bardo was a named insured on an automobile policy that provided liability coverage for bodily injury up to $50,000 per person. Plaintiff had an automobile insurance policy issued by defendant Home-Owners that provided UIM coverage up to $250,000 per person.

[6] The assured-clear-distance statute, MCL 257.627(1), provides, in relevant part:

> An individual operating a vehicle on a highway shall operate that vehicle at a careful and prudent speed not greater than nor less than is reasonable and proper, having due regard to the traffic, surface, and width of the highway and of any other condition existing at the time. An individual shall not operate a vehicle on a highway at a speed greater than that which will permit a stop within the assured, clear distance ahead.

[7] The rear-end collision statute, MCL 257.402(a), states, in pertinent part:

> In any action, in any court in this state when it is shown by competent evidence, that a vehicle traveling in a certain direction, overtook and struck the rear end of another vehicle proceeding in the same direction, or lawfully standing upon any highway within this state, the driver or operator of such first mentioned vehicle shall be deemed prima facie guilty of negligence.

[8] MCL 500.3135 of the no-fault act, MCL 500.3101 *et seq.*, provides as follows:

> (1) A person remains subject to tort liability for noneconomic loss caused by his or her ownership, maintenance, or use of a motor vehicle only if the injured person has suffered death, serious impairment of body function, or permanent serious disfigurement.

arguing that because plaintiff was not legally entitled to recover from Bardo, plaintiff was not entitled to UIM benefits under her policy.

Plaintiff responded that she was entitled to summary disposition under MCR 2.116(I)(2). Plaintiff asserted that a stopped vehicle in the middle of the road, with no activated brake lights or turn signal, presented an unusual and unexpected circumstance, and that plaintiff had acted in a reasonably prudent manner by taking evasive action once she perceived the hazard. Accordingly, plaintiff argued, she confronted circumstances that enabled her to invoke the sudden-emergency doctrine to overcome any presumed negligence. Plaintiff further contended that Bardo was presumptively negligent when she stopped her vehicle in the middle of the road, with no activated brake lights or turn signal, in violation of several motor-vehicle statutes, and that Bardo failed to present sufficient evidence to rebut the presumption.

Following hearings on the parties' respective motions, the trial court granted summary disposition of plaintiff's claims, concluding that the sudden-emergency doctrine did not apply to excuse plaintiff's negligence, and that plaintiff was more than 51% at fault for the accident, and denied plaintiff's motion for summary disposition. On November 13, 2023, the court entered an order granting Bardo's motion for summary disposition regarding plaintiff's negligence claim under MCR 2.116(C)(10) and denying plaintiff's motion for summary disposition under MCR 2.116(I)(2). On November 15, 2023, the trial court issued an order granting Home-Owner's concurrence with Bardo's motion for summary disposition and joinder regarding plaintiff's UIM claim, dismissing plaintiff's UIM claim against Home-Owner, and similarly denying plaintiff's motion for summary disposition. On May 29, 2024, the trial court entered a stipulated order of dismissal regarding plaintiff's first-party PIP claim against Home-Owners stating that "this matter is dismissed in its entirety, with prejudice, pursuant to the terms of the respective Release, without costs of fees to any party." This appeal ensued.

## II. STANDARDS OF REVIEW

"This Court reviews de novo a trial court's decision on a motion for summary disposition." *White v Taylor Distrib Co*, 275 Mich App 615, 619; 739 NW3d 132 (2007), aff'd 482 Mich 136 (2008). "A motion under MCR 2.116(C)(10) tests the factual sufficiency of the complaint." *Cannon Twp v Rockford Pub Sch*, 311 Mich App 403, 411; 875 NW2d 242 (2015). As previously explained by this Court:

> MCR 2.116(C)(10) provides for summary disposition where there is no genuine issue regarding any material fact, and the moving party is entitled to judgment or partial judgment as a matter of law. A trial court may grant a motion for summary

---

(2) For a cause of action for damages under subsection (1) . . .all of the following apply:

\* \* \*

(b) Damages must be assessed on the basis of comparative fault, except that damages must not be assessed in favor of a party who is more than 50% at fault.

disposition under MCR 2.116(C)(10) if the pleadings, affidavits, and other documentary evidence, when viewed in a light most favorable to the nonmovant, show that there is no genuine issue with respect to any material fact. Initially, the moving party has the burden of supporting its position with documentary evidence, and, if so supported, the burden then shifts to the opposing party to establish the existence of a genuine issue of disputed fact. Where the burden of proof at trial on a dispositive issue rests on a nonmoving party, the nonmoving party may not rely on mere allegations or denials in the pleadings, but must go beyond the pleadings to set forth specific facts showing that a genuine issue of material fact exists. Generally speaking, where the opposing party fails to present documentary evidence establishing the existence of a material factual dispute, the motion is properly granted. A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ. Courts are liberal in finding genuine issues of material fact. [*White*, 275 Mich App at 620 n 2 (quotation marks, citations, and alteration omitted).]

"If, after careful review of the evidence, it appears to the trial court that there is no genuine issue of material fact and the opposing party is entitled to judgment as a matter of law, then summary disposition is properly granted under MCR 2.116(I)(2)." *Lockwood v Ellington*, 323 Mich App 392, 401; 917 NW2d 413 (2018).

To the extent the interpretation of plaintiff's Home-Owners' insurance policy is implicated, "insurance policies are subject to the same contract construction principles that apply to any other species of contract." *Rory v Continental Ins Co*, 473 Mich. 457, 461; 703 NW2d 23 (2005) (emphasis omitted). Therefore, "a court must construe and apply unambiguous contract provisions as written." *Id*.

### III. NEGLIGENCE

The trial court erred in granting Bardo summary disposition of plaintiff's negligence claims under MCR 2.116(C)(10). "[N]egligence consists of four elements: (1) a duty owed by the defendant to the plaintiff, (2) a breach of that duty, (3) causation, and (4) damages." *Cummins v Robinson Twp*, 283 Mich App 677, 692; 770 NW2d 421 (2009). " 'Duty' is a legally recognized obligation to conform to a particular standard of conduct toward another so as to avoid unreasonable risk of harm." *Id*. "A duty of care may arise from a statute, a contractual relationship, or by operation of the common law, which imposes an obligation to use due care or to act so as not to unreasonably endanger other persons or their property." *Id*.

Plaintiff and Bardo each contend that the other was presumptively negligent for violating certain Michigan motor-vehicle statutes.

[E]vidence of violation of a penal statute creates a rebuttable presumption of negligence. This presumption may be rebutted by evidence of a legally sufficient excuse for the statutory violation. Absent such excuse, the jury may infer negligence on the basis of the violation. It is then for the jury to determine whether

-6-

> violation of the statute was a proximate cause of the accident. [*Klanseck v Anderson Sales & Serv, Inc*, 426 Mich 78, 86; 393 NW2d 356 (1986), citing *Zeni v Anderson*, 397 Mich 117, 128-129; 243 NW2d 270 (1976).]

Whether a legally sufficient excuse exists to rebut the presumption of negligence is "determined by the circumstances of each case." *Zeni*, 397 Mich at 143. See also *White*, 275 Mich App at 621. Accordingly, "when a court adopts a penal statute as the standard of care . . ., violation of that statute establishes a prima facie case of negligence, with the determination to be made by the finder of fact whether the party accused of violating the statute has established a legally sufficient excuse." *Zeni*, 397 Mich at 143. If a sufficient excuse for the statutory violation is found to exist, "the appropriate standard of care then becomes that established by the common law." *Id*. That is, "an obligation to use due care or to act so as not to unreasonably endanger other persons or their property." *Cummins*, 283 Mich App at 692.

Satisfying the causation element of negligence requires the plaintiff to prove both "cause in fact and legal (or 'proximate') cause." *Craig v Oakwood Hosp*, 471 Mich 67, 86; 684 NW2d 296 (2004). To satisfy the cause-in-fact element, "a plaintiff is not required to negate all other reasonable causation theories . . .[but] must present substantial evidence from which a jury may conclude that more likely than not, but for the defendant's conduct, the plaintiff's injuries would not have occurred." *Wilson v Alpena Co Rd Comm*, 263 Mich App 141, 150; 687 NW2d 380 (2004), aff'd 474 Mich 161 (2006). See also *Craig*, 471 Mich at 86-67. "To establish legal cause, the plaintiff must show that it was foreseeable that the defendant's conduct may create a risk of harm to the victim, and that the result of that conduct and intervening causes were foreseeable." *Weymers v Khera*, 454 Mich 639, 648; 563 NW2d 647 (1997) (quotation marks and citation omitted). For this purpose, any presumptive negligence arising from a statutory violation must also have been a proximate cause of the accident. *Klanseck*, 426 Mich at 86; *Stahl v Bell*, 276 Mich 37, 39; 267 NW 779 (1936).

"There may be more than one proximate cause of an injury." *Brisboy v Fibreboard Corp*, 429 Mich 540, 547; 418 NW2d 650 (1988). "[T]wo causes frequently operate concurrently so that both constitute a direct proximate cause of the resulting harm." *Id*. (quotation marks and citation omitted). "Thus, [a] defendant cannot escape liability for . . .negligent conduct merely because the negligence of others may also have contributed to the harm caused." *Id*. That is, "the mere fact that some other cause cooperates with the negligence of the defendant to produce the injury for which suit is brought does not relieve him from liability." *Camp v Wilson*, 258 Mich 38, 42; 241 NW 844 (1932) (quotation marks and citation omitted). Rather, "[i]t is elementary that where injury results from the concurrent negligence of two or more, each proximately contributing to the result, recovery may be had against one or more, although but one satisfaction may be had." *Id*. (quotation marks and citation omitted). Generally, it is "for the jury to determine whether the [statutory] violation was a proximate cause of the accident." *Klanseck*, 426 Mich at 86.

In cases involving a motor vehicle accident, "[d]amages must be assessed on the basis of comparative fault, except that damages must not be assessed in favor of a party who is more than 50% at fault." MCL 500.3135(2)(b). The determination of the parties' relative negligence presents a question for the jury, unless reasonable minds could not differ on the issue. *Rodriguez v Solar of Mich, Inc*, 191 Mich App 483, 488; 478 NW2 914 (1991).

## A. BARDO'S NEGLIGENCE

Plaintiff contends that Bardo was prima facie negligent with respect to the accident because Bardo stopped her vehicle in the middle of the westbound lane of Crosby Road, with no working brake lights or turn signal, in violation of several motor-vehicle statutes—particularly MCL 257.648(1) and (2) (a motor-vehicle operator must signal before stopping or turning from a direct line, either by hand or by a mechanical or electrical signal device), and MCL 257.683(1) (a person may not drive a motor vehicle "that is in such an unsafe condition as to endanger a person, or that . . .is not at all times equipped with lamps and other equipment in proper condition").[9] "Absent a statutory requirement, a driver has a duty to operate a vehicle with 'ordinary and reasonable care and caution.' " *McDuffie v Neal*, 21 NW3d 205, 206 (2025), quoting *Zarzecki v Hatch*, 347 Mich. 138, 141; 79 NW2d 605 (1956).[10] As provided by the Michigan Supreme Court in *Meyers v Rieck*, 509 Mich 460, 471; 983 NW2d 747 (2022), once a duty is established, the pertinent inquiry is whether the standard of care was breached. The standard of care in a negligence action may be established by statute or legal regulation. *Id*. at 472. In Michigan, the violation of a statutory duty will generally amount to negligence per se. *Id*. However, the breach of a safety or penal statute establishes a rebuttable presumption of negligence, rather than negligence per se. *Klinke v Mitsubishi Motors Corp*, 458 Mich 582, 592; 581 NW2d 272 (1998).

In the present case, there are genuine issues of material fact regarding whether Bardo breached the standard of care set forth by the applicable motor-vehicle statutes, thereby giving rise to a presumption of negligence, and whether she otherwise breached her common-law duty to use reasonable care so as not to create an unreasonable risk of danger by stopping in the middle of the road with no illuminated brake lights or turn signal.[11] Plaintiff testified that Bardo's vehicle was stopped in the middle of the westbound lane with no illuminated brake lights or turn signal. Bardo, however, asserted that she had not experienced any issues with her turn signals or brake lights, and that she knew her turn signals were operating during the pertinent time period. Bardo's alleged admission in regard to the operability of her turn signal at the scene was further in dispute. Moreover, the parties contested whether Bardo's vehicle was completely stopped at the time of the collision, given that plaintiff testified that Bardo's vehicle was "at a stop," while Bardo testified that she only slowed down to three to four miles per hour. Courts "may not resolve factual disputes or determine credibility on a summary disposition motion." *Burkhardt v Bailey*, 260 Mich App 636, 646-647; 680 NW2d 453 (2004). Accordingly, the trial court properly denied plaintiff

---

[9] Plaintiff also cites MCL 257.686(1), which requires that motor vehicles be equipped with rear lamps that emits a visible red light plainly visible from a distance of 500 feet to the rear, and MCL 257.697(1), which requires that motor vehicles be equipped with rear stop lamps that emit red or amber light when the brakes are applied.

[10] "An order that is a final Supreme Court disposition of an application and that contains a concise statement of the applicable facts and reasons for the decision is binding precedent." *Steele v Winfield*, 343 Mich App 394, 400; 997 NW2d 341 (2022) (quotation marks and citation omitted).

[11] See *Camp*, 258 Mich at 42 (a driver has a duty of reasonable care when stopping on a roadway).

summary disposition regarding the matter of Bardo's negligence.[12]  See *McDuffie*, 21 NW3d at 206 (opining that "reasonable minds could differ on whether the truck's turn signals were functioning properly at the time of the incident," considering the parties' contrasting testimonies concerning the operability of the truck's turn signals, rendering summary disposition improper).

However, I disagree with defendants' argument that the record did not support a finding that Bardo's alleged presumed negligence arising from her statutory violations did not proximately cause the accident.  As previously noted, plaintiff testified that after turning onto Crosby Road, she began to accelerate, yet remained below the posted speed limit of 45 miles per hour, with both hands on the steering wheel while "looking down the road," when she saw Bardo's vehicle was "at a stop" in the middle of the road.  Plaintiff asserted that she was unable to "slow [her] vehicle to a stop" before the collision because she did not notice Bardo's stopped vehicle until she was "close," after which plaintiff "swerved and hit the brake," but could not avoid striking Bardo.  Plaintiff attributed the accident to the failure of Bardo's brake lights and turn signal to alert her that Bardo's vehicle was stopped, and plaintiff insisted she could not have done anything differently to avoid it.[13]  Further, contrary to defendants' contentions, the evidence did not establish, as a matter of law, that plaintiff had 412 feet to perceive the hazard presented by Bardo's vehicle and adjust her speed accordingly.  While it was undisputed that the accident occurred 412 feet from the Genesee-Crosby intersection, that does not necessarily mean that plaintiff was traveling 412 feet behind Bardo when she turned onto Crosby Road, or when Bardo stopped on the roadway.  Again, plaintiff testified that she did not notice Bardo's stopped vehicle until she was "close" to it.  Further, Officer Jackson identified the inoperability of a vehicle's brake lights or turn signal as factors that may affect a following motorist's ability to perceive the danger presented by a stopped vehicle.  Consequently, there was significant, if limited, evidentiary support for plaintiff's proffered reason for colliding with the rear of Bardo's vehicle.

Additionally, reasonable minds could differ regarding whether, under the circumstances, plaintiff could have timely perceived the hazard presented by Bardo's stopped vehicle, with no illuminated brake lights or turn signal, in time to adjust her speed or direction to avoid rear-ending Bardo.[14]  That is, if plaintiff is believed, the absence of any warning lights was, at least, a contributing factor leading to, or a proximate cause of, the accident and plaintiff's injuries.  See *Rodriguez*, 191 Mich App at 488 ("[P]roximate cause is an issue for the jury, provided that there is evidence from which reasonable persons could draw a fair inference that the injury was caused by negligence.")  Therefore, summary disposition on the issues of Bardo's presumptive negligence, and whether her negligence proximately caused the accident, was improper.

---

[12] However, for purposes of plaintiff's summary-disposition motion, Bardo accepted that her vehicle was stopped in the middle of the road with no illuminated brake lights or turn signal.

[13] There was no evidence that plaintiff was speeding, distracted, or otherwise negligent.

[14] "Until a hazard is perceived, or until a hazard would have been apparent to a reasonable man, considering pertinent surrounding circumstances of traffic and terrain, a driver has no duty to guard against or anticipate an unknown hazard." *Briggs v Knapp*, 513 Mich 857, 857; 995 NW2d 356 (2023) (quotation marks and citation omitted).  See also *McDuffie*, 21 NW3d at 207-208.

## B. PLAINTIFF'S NEGLIGENCE

Defendants argue that plaintiff was negligent, as a matter of law, with regard to the accident because she violated MCL 257.402(a), the rear-end collision statute, and MCL 257.627(1), the assured-clear-distance statute. I opine that factual issues exist regarding the applicability of the sudden-emergency doctrine to rebut plaintiff's presumed negligence.

In the instant matter, there was evidence to substantiate the contention that plaintiff violated the cited statutes. Plaintiff's testimony that she was traveling westbound on Crosby Road but failed to observe Bardo's stopped vehicle until too "close" to avoid rear-ending Bardo itself fairly indicated that plaintiff violated MCL 257.402(a). That testimony could also reasonably establish that plaintiff failed to maintain a speed that would have permitted her to stop within an assured, clear distance of Bardo's vehicle, in violation of MCL 257.627(1). See *Amick v Baller*, 102 Mich App 339, 343; 301 NW2d 530 (1980) (drivers are required to operate their vehicles at speeds that permit them to maintain an assured, clear distance from other vehicles in light of road conditions and other circumstances); MCL 257.643(1) ("The operator of a motor vehicle shall not follow another vehicle more closely than is reasonable and prudent, having due regard for the speed of the vehicles and the traffic upon and the condition of the highway.").

However, the inquiry does not end there. Instead, "when a court adopts a penal statue as the standard of care in an action for negligence, violation of that statute establishes a prima facie case of negligence, with the determination to be made by the finder of fact whether the party accused of violating the statute has established a legally sufficient excuse." *Zeni*, 397 Mich at 143. See also *id.* at 129-130. Accordingly, this Court has recognized, "Under the rear-end collision statute a rebuttable presumption arises that the offending driver is *prima facie* guilty of negligence." *White*, 275 Mich App at 621 (quotation marks and citation). The Michigan Supreme Court has likewise held that "a violation of the assured-clear-distance statute constitutes negligence per se." *Vander Laan v Miedema*, 385 Mich 226, 231; 188 NW2d 564 (1971). But application of the assured-clear-distance statute "is subject to qualification by the test of due or ordinary care, exercised in light of the attending conditions." *Id.* (quotation marks and citation omitted). Plaintiff, therefore, is entitled "to come forward with evidence rebutting the presumption of negligence" stemming from her statutory violations. *Zeni*, 397 Mich App at 143.

Plaintiff argues that confronting Bardo's stopped vehicle in the middle of the westbound lane of Crosby Road, with no activated taillights or turn signal, created a sudden emergency sufficient to excuse any presumptive negligence on her part for rear-ending, or failing to maintain an assured, clear distance of, Bardo's vehicle. "The sudden-emergency doctrine is a judicially created principle." *Vsetula v Whitmyer*, 187 Mich App 675, 680; 468 NW2d 53 (1991). The doctrine arises "when a collision is shown to have occurred as the result of a sudden emergency not of the [driver's] own making." *Vander Laan*, 385 Mich at 231. It is "a logical extension of the 'reasonably prudent person' standard, with the question being whether the defendant acted as a reasonably prudent person when facing the emergency, giving consideration to all the circumstances surrounding the accident." *White*, 275 Mich App at 622. "To come within the purview of the sudden-emergency doctrine, the circumstances surrounding the accident must present a situation that is unusual or unsuspected." *Id*. As explained by this Court:

The factual pattern is "unusual" if the facts present in the case vary from the everyday traffic routine confronting a motorist. Thus, a blizzard or other extreme weather condition may cause such an unusual driving environment that the normal expectations of due and ordinary care are modified by the attenuating factual conditions. "Unsuspected" facts are those which may appear in the everyday movement of traffic, but which take place so suddenly that the normal expectations of due and ordinary care are again modified by the attenuating factual conditions. [*Vsetula*, 187 Mich App at 681, quoting *Amick*, 102 Mich App at 341-342.]

I agree with defendants that the record did not indicate the "unusual" prong of the sudden-emergency doctrine was present in this case. "Unusual" in this sense is "typically associated with a phenomenon of nature." *Vander Laan*, 385 Mich at 232. It is undisputed that the subject accident occurred in daylight, in clear and dry conditions, and that plaintiff had an unobstructed view of the roadway. See *id*. at 232-233 ("The record . . .reveals that the accident occurred during the daylight hours on a dry, paved highway," precluded "the possibility that the surrounding circumstances made the situation 'unusual.' ") However, there was a genuine factual dispute regarding whether plaintiff was suddenly confronted with "unsuspected facts," thereby implicating the sudden-emergency doctrine.

"Unsuspected" . . .connotes a potential peril within the everyday movement of traffic. To come within the narrow confines of the emergency doctrine as "unsuspected" *it is essential that the potential peril had not been in clear view for any significant length of time, and was totally unexpected*. A good example of this can be seen in *McKinney v Anderson* . . . ,[373 Mich 414; 129 NW2d 851 (1964)] where [the] defendant rear-ended a plaintiff's car which had stopped while pushing a disabled vehicle on the highway. Coming over the crest of a hill, [the] defendant first saw [the] plaintiff's taillights when he was 400 feet away. However, [the] defendant did not clearly see the peril of [the] plaintiff's stopping until he was about 100-200 feet away, at which point it was too late to avoid a collision under the circumstances. Furthermore, the failure of the plaintiff to signal that he was stopping, coupled with the surrounding darkness, made the subsequent peril totally unexpected to the defendant. [*Vander Laan*, 385 Mich at 232 (emphasis added).]

But see *Hill v Wilson*, 209 Mich App 356, 357-358; 531 NW2d 744 (1995) (the sudden-emergency doctrine did not excuse any presumed negligence for hitting the rear end of a vehicle that braked suddenly in rush-hour traffic, because sudden, unanticipated braking is expected during rush hour).

Applying these standards to the instant matter, and viewed in the light most favorable to plaintiff, reasonable minds could differ regarding whether the condition confronting plaintiff constituted a sufficiently unsuspected peril to fall within the scope of the sudden-emergency doctrine. A stopped vehicle on a road, preparing to execute a turn, is undoubtedly a common occurrence, and therefore would not be unexpected in and of itself. And this case involved Crosby Road, a two-lane road with houses along it, such that it was reasonable to expect that a driver may stop, or slow down, in order to turn into a driveway, as Bardo did. Further, there was no evidence that Bardo stopped her vehicle suddenly. To the contrary, Bardo testified that, after turning onto

-11-

Crosby Road, she traveled westbound on Crosby toward her house, which was only the third house on the street, such that she did not "have to speed up or slow down very much to start turning" into her driveway. Bardo additionally explained that she slowed down to three or four miles per hour before she started to turn right into her driveway, at which time plaintiff struck her. Plaintiff also asserted that she was "not very far off Genesee" when she first noticed Bardo's vehicle "at a stop" in the middle of the westbound lane, and their vehicles were "close."

But plaintiff's testimony indicated that she did not perceive Bardo's stopped vehicle in time to avoid the collision, not because Bardo stopped suddenly or because plaintiff was not paying attention, but because Bardo's brake lights or turn signal were not activated.[15] Bardo's allegedly stopped vehicle, with no operable brake lights or turn signal, in the middle of the roadway, naturally created a potential hazard for motorists following that vehicle. The clear purpose of brake lights and turn signals is to warn following motorists so they can adjust their speed and maintain an assured and clear distance to prevent a collision.[16] Therefore, a motorist trailing another should certainly expect to see brake lights or a turn signal if the leading vehicle is slowing or stopping to execute a turn. As Officer Jackson confirmed, the lack of brake lights or a turn signal could "absolutely" affect the following driver's ability to timely perceive that a vehicle had slowed or stopped to make a turn.

Although it would not be entirely unexpected for a vehicle traveling in everyday traffic to stop to make a turn without displaying a turn signal,[17] in the present case, the alleged hazard confronting plaintiff was Bardo's stopped vehicle in the middle of the road, without any warning lights, providing no indication that the vehicle was engaged in anything other continued forward travel as plaintiff accelerated toward it. This condition potentially affected plaintiff's ability to timely perceive the hazard and adjust her driving as necessary to avoid colliding with Bardo. Therefore, in this context, Bardo's vehicle—when plaintiff encountered it—could reasonably qualify as wholly unexpected.

Additionally, contrary to defendants' contention, reasonable minds could differ regarding whether the potential hazard presented by Bardo's stopped vehicle was in plaintiff's "clear view for a significant length of time." *Vander Laan*, 385 Mich at 232. It is uncontested that the accident occurred in daylight, in clear and sunny conditions, and that plaintiff's view was unobstructed as she drove 412 feet on Crosby Road before collision occurred, such that it could be reasonably inferred that plaintiff had a clear view of the roadway for significant time before the accident. But not *necessarily*. Rather, that issue presents questions of fact for a jury to resolve, including consideration of the effect of inoperable brake lights or turn signals on plaintiff's ability to timely perceive Bardo's slowed or stopped vehicle, the distance plaintiff was traveling behind Bardo

---

[15] As previously noted, plaintiff testified that she had both hands on the steering wheel, was "looking down the road," and was not using, or glancing at, her phone.

[16] See *Amick*, 102 Mich App at 343 ("The purpose for giving the signal is obviously to warn other motorists of an intent to change directions with the vehicle being driven.")

[17] See *Spillers v Simons*, 42 Mich App 101, 106; 201 NW2d 374 (1972) (a plaintiff's failure to give a signal before turning, without more, "was not the type of unexpected emergency that would bring into play the emergency doctrine").

when Bardo started slowing, and plaintiff's own vehicle speed. Given these factual questions pertaining to the application of the sudden-emergency doctrine, summary disposition regarding the matter of plaintiff's own negligence was unwarranted. Further, even if plaintiff was presumptively negligent as a matter of law, this would not preclude plaintiff's negligence claims against Bardo, because plaintiff's and Bardo's comparative negligence with respect to the accident remains unsettled, as discussed below. Although there was sufficient evidence to establish that plaintiff breached her duty to keep an assured, clear distance of Bardo's vehicle, or to keep a proper lookout and to avoid a rear-end collision, there was additionally adequate evidence to demonstrate that Bardo breached her duty to properly signal that she was slowing or stopping to turn, as addressed below. See *Rodriguez*, 191 Mich App at 488 ("The standards for determining the comparative negligence of a plaintiff are indistinguishable from the standards for determining the negligence of a defendant, and the question of a plaintiff's own negligence for failure to use due care for his own safety is a jury question unless all reasonable minds could not differ . . . . "). See also MCL 600.6304.

C. MCL 500.3135(2)(b)

Plaintiff argues the matter of the parties' comparative fault could not be properly resolved on summary disposition because a reasonable juror could find that Bardo was more than 50% at fault for the accident. I agree.

" 'Michigan's no-fault act generally abolishes tort liability arising from the ownership, maintenance, or use of a motor vehicle.' " *Miclea v Cherokee Ins Co*, 333 Mich App 661, 667; 963 NW2d 665 (2020), quoting *Grange Ins Co v Lawrence*, 494 Mich 475, 490; 835 NW2d 363 (2013). Under MCL 500.3135(1), however, "[a] person remains subject to tort liability for noneconomic loss caused by his or her ownership, maintenance, or use of a motor vehicle only if the injured person has suffered death, serious impairment of body function, or permanent serious disfigurement." MCL 500.3135(1). As noted, however, "[d]amages must be assessed on the basis of comparative fault, *except that damages must not be assessed in favor of a party who is more than 50% at fault*." MCL 500.3135(2)(b) (emphasis added). That is, "the liability of each person shall be allocated . . .*by the trier of fact* and . . .in direct proportion to the person's percentage of fault." MCL 600.2957(1). In determining the parties' comparative fault, "the trier of fact shall consider both the nature of the conduct of each person at fault and the extent of the causal relation between the conduct and the damages claimed." MCL 600.6304(b)(2).

A review of the record indicates that reasonable minds could differ on the issue of the parties' comparative fault. While a reasonable juror may conclude that plaintiff, by failing to maintain a proper lookout and an assured, clear distance behind Bardo's vehicle, bore most of the responsibility for the accident, a reasonable juror may also resolve that Bardo was most at fault by stopping in the middle of her lane with no illuminated brake lights or turn signal. Or, a reasonable juror could conclude that plaintiff and Bardo were equally at fault. Therefore, as plaintiff contends, because reasonable minds could differ regarding whether plaintiff, or Bardo, was at greater fault for the collision, MCL 500.3135(2)(b) did not compel granting summary disposition in defendants' favor. See *McDuffie*, 21 NW3d 208 ("Because reasonable minds could differ on which driver was more at fault for the crash, MCL 500.3135(2)(b) does not bar recovery for plaintiff.")

IV. UNDERINSURED MOTORIST BENEFITS

-13-

The trial court further erred by granting summary disposition of plaintiff's claim for UIM benefits against Home-Owners. "[U]nderinsured-motorist coverage is not required by Michigan law, and the terms of coverage are controlled by the language of the contract itself, not by statute." *Dawson v Farm Bureau Mut Ins Co*, 293 Mich App 563, 568; 810 NW2d 106 (2011). Accordingly, " 'the scope, coverage, and limitations of underinsurance protection are governed by the insurance contract and the law pertaining to contracts.' " *Id*. at 568, quoting *Mate v Wolverine Mut Ins Co*, 233 Mich App 14, 19; 592 NW2d 379 (1998).

Plaintiff's policy under Home-Owners provides, in pertinent part:

> **We** will pay compensatory damages, including but not limited to loss of consortium, any person is legally entitled to recover from the owner or operator of an **underinsured automobile** because of bodily injury sustained by an injured person while **occupying** an **automobile** that is covered by SECTION II – LIABILITY COVERAGE of the policy.

Accordingly, plaintiff would be entitled to UIM benefits under her policy if she were "legally entitled to recover" from Bardo. Home-Owners contends that it could not be liable for UIM benefits because no genuine issues of material fact existed regarding whether plaintiff was presumptively negligent, and more than 50% at fault for the accident, and thus barred from recovering damages under MCL 500.3135(2)(b). However, because there is a genuine factual dispute concerning the parties' relative negligence, the issue of whether plaintiff was legally entitled to recover for her accident-related injuries from defendants was, likewise, not properly resolved on summary disposition. For the reasons stated, I would affirm the underlying orders to the extent they deny plaintiff's motion for summary disposition, reverse the orders to the extent they grant summary disposition of plaintiff's claims, and remand for further proceedings. I therefore respectfully dissent.

/s/ Mariam S. Bazzi